## IN RE ALLARD GUARDIANSHIP.

(No. 3,380.)

(Submitted May 5, 1914. Decided May 22, 1914.)

[141 Pac. 661.]

*Guardian and Ward—Loans of Ward's Funds—Interest—Duty of Guardian—Compensation—When Properly Disallowed—Attorney's Fees—Discretion.*

Guardian and Ward—Settlement of Final Account—Loans—Interest.
   1.   Where a guardian of two minors admitted that a loan made by him originally belonged to the estate of one of them but that he transferred it, without order of court, to the account of the other, he was not in a position, on final settlement of the former's account, to complain of an order directing him to account to said minor for the interest

earned on such loan from the date of the transfer to the date upon which it was paid.

[As to powers of guardian in chancery and at common law, see notes in 18 Am. Dec. 689; 89 Am. St. Rep. 257.]

Same—Loaning Ward's Funds—Interest.
2. A guardian who without an order of court loaned the funds of his ward on an interest-bearing note, was properly directed to account for the interest due thereon at the date of final settlement even though the ward refused to accept the note (then due) in lieu of cash.

[As to personal liability of guardians, see note in 75 Am. Dec. 447.]

Same—Interest—Duty of Guardian.
3. A guardian must account for all accumulations from the use of his ward's funds, and will, under no circumstances, be permitted to profit from their use.

Same—Loaning Ward's Funds—Duty of Guardian.
4. *Quaere:* Must a guardian loan his ward's moneys, without directions from the court to do so?

Same—Liability of Guardian.
5. The rule that a guardian making a loan of his ward's funds must exercise due care is applied more strictly against a guardian who makes a loan on his own responsibility than where he makes one at the direction of the court.

Same—Compensation—When and When not to be Allowed.
6. Section 7777, Revised Codes, providing that every guardian must be allowed such compensation for his services as the court deems just, contemplates a faithful management of the estate by the guardian, and, while a mere technical breach of duty not resulting in injury to the ward will not ordinarily justify a court in withholding compensation altogether, a flagrant violation of the duties of the trust will do so.   ·

Same—When Compensation not to be Allowed.
7. Where a guardian not only failed for more than thirteen years to render the annual account required by statute or make any inventory, but mingled guardianship funds with his own, giving checks for large amounts of his ward's money for purposes which he was unable to disclose, the court properly denied him compensation for his services.

Same—Misconduct Justifying Removal.
8. A guardian may not mingle guardianship funds with those belonging to himself, or profit by the use of the funds of the ward, and any such officer attempting so to do should be summarily removed.

Same—Attorney's Fees—Discretion.
9. The allowance of attorney's fees on final settlement of a guardian's account is in the court's discretion, and its action will not be disturbed in the absence of a clear abuse thereof.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

PROCEEDINGS by John M. Keith for the settlement of his account as guardian of Eva May Allard, minor.   From an order correcting and allowing the account as corrected, and an order denying him a new trial, the guardian appeals.   Affirmed.

*Mr. Henry C. Stiff* and *Mr. Thomas N. Marlowe,* for Appellant, submitted a brief; *Mr. Stiff* argued the cause orally.

*Messrs. Tolan & Gaines,* for Respondent, submitted a brief. *Mr. John H. Tolan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 29, 1899, John M. Keith was duly appointed guardian of the persons and estates of Louise Anna Allard and Eva May Allard, minors, and immediately thereafter qualified. On December 16, 1912—Eva May Allard having become of age —the guardian presented his final account of his administration of her estate, and prayed that he be discharged as her guardian. In his account the guardian charged himself with total receipts amounting to $26,443.77, and took credit for expenditures made on behalf of the ward, aggregating $18,332.66. Of the balance, he represented that he had loaned $7,500 to Louise Stringer, and asked that he be permitted to turn over the note and be credited with the amount of the principal; that he be allowed, out of the $611.11 remaining, such compensation for himself as the court might fix, $150 for his attorney's fees; and that upon delivering the balance to the ward, together with the Stringer note duly indorsed, he be discharged. To this account, the ward interposed objections, and a hearing was ordered for December 28, but was continued to April 19, 1913, without being concluded. On April 19 the guardian filed an amended account in which he charged himself, as before, with receipts aggregating $26,443.77, but took credit for expenditures aggregating $20,656.52, including, as items of his expenditures, $1,048.88, compensation for himself as guardian, and $750 for his attorney's fees. In this amended account no mention whatever was made of the Stringer note or interest; but the amount of the principal was included in the total receipts, and a cash balance of $5,787.25 was admitted to be due to the ward. Written objections to this amended account having been made by the

ward, a hearing was had, which resulted in the court changing the account in four particulars. An order was made and entered charging the guardian with total receipts of $31,112.27, crediting him with expenditures on behalf of the ward, aggregating $19,107.66, allowing the account as thus corrected, and directing him to pay over to the ward a balance of $12,004.61. From that order and a further order denying the guardian a new trial, these appeals are prosecuted.

The difference between the amount admitted by the guardian to be due to the ward and the balance found to be due by the lower court is made up by charging the guardian with $923.50, interest on the William Irvine note, $3,745, interest on the Stringer note, disallowing his claim for compensation as guardian, and reducing his attorney's fees to $250. The four changes thus made in the amended account by the district court constitute the grounds of complaint presented by these appeals.

1. The first change made did not result in any prejudice to [1] the guardian, and therefore affords no ground for complaint so far as he is concerned. As guardian of the two Allard minors, he was an officer of the court, subject to its directions. (Rev. Codes, sec. 3788.) He admitted that the Irvine loan originally belonged to the Eva May Allard account; but he testified that he transferred it to the account of the other minor to equalize their loans. The transfer was made without an order of court, and he is now directed to account to the Eva May Allard estate for the interest earned on that loan from the date of the transfer to the day upon which the note was paid. The presumption is that the same court will give him credit for a like amount in the Louise Anna Allard account, and, if so, nothing whatever is involved but a mere matter of bookkeeping.

2. On May 10, 1902, the guardian, without an order of court, loaned $7,500 of the moneys belonging to this ward, taking a [2] demand note bearing interest at seven per cent and executed by Louise Stringer as principal and three others as accommodation indorsers. The interest was paid to November 10, 1905. At the time the final account was rendered in December,

1912, the principal was due, as was likewise accumulated interest amounting to $3,745. Because of the ward's refusal to accept that note, the guardian in his amended report treated it as $7,500 cash, charged himself with that amount as included in the total receipts, and made no mention of the note or the interest. The trial court, however, refused to permit this amendment, and in the order charged the guardian with the accrued interest as well.

If we understand the contention of appellant aright, it is that, if the ward so far ratified the loan as to insist upon having the accumulated interest, she should be held to accept the note as representing both the principal and the interest due, or, if she refuses to accept the note in lieu of cash, she should be held to repudiate the loan altogether, and therefore to be without any claim to the interest. Whatever merit there might be in an argument of this character when advanced by one of two persons, both *sui juris,* and dealing at arm's length, the relationship of guardian and ward is of such nature as to forbid the assertion of the doctrine for which the appellant contends. As guardian, it was his duty to "keep safely the property of his ward" (Rev. Codes, sec. 3786), and to "manage the estate of his ward frugally" (sec. 7771). Upon application of the ward or any other person interested, the district court might authorize or require the guardian to invest money belonging to his ward (sec. 7795), or, if the particular money was derived from the sale of other property of the ward for the express purpose of investment, then "the guardian must make the investment according to his best judgment, or in pursuance of any order that may be made by the court or judge." (Sec. 7783.) Beyond these specific directions, the Codes do not go, except to declare that: "The relation of a guardian and ward is confidential, and is subject to the provisions of the title on trusts." (Sec. 3787.)

Of the provisions of that same title on Trusts, section 5375 declares: "A trustee may not use or deal with the trust property for his own benefit, or for any other purpose unconnected

with the trust, in any manner." This court has emphasized that statutory rule by declaring that the trustee must account [3] for all accumulations from the use of trust funds, and that under no circumstances will he be permitted to profit from their use. (*In re Davis Estate,* 35 Mont. 273, 88 Pac. 957; *City of Butte* v. *Goodwin,* 47 Mont. 155, 134 Pac. 670.)

We are not called upon at this time to determine whether [4] it was an absolute duty devolving upon the appellant, as guardian, to loan his ward's moneys, without directions from the court to do so. The fact is he did make the Stringer loan on his own responsibility, and at the time he filed his final account it had earned $3,745 in interest, which he had not collected. Under the rules of the statute and the decisions of this court above, the guardian could not have any claim to the interest, but must account for the principal, as well as the accumulations.

Neither are we required to determine whether if, in making [5] the Stringer loan, the guardian exercised due care and caution, and the loan thereafter became worthless, without fault on his part, he should be credited with the amount in his final account, and the ward be compelled to accept the note in lieu of that much cash—that is not this case. It is sufficient at this time to say, however, that the rule is drawn much more strictly against the guardian where he makes loans upon his own responsibility than where he makes them at the direction of the court. (21 Cyc. 88.) Upon this hearing the guardian insisted that the Stringer loan is perfectly good and the note collectible; but he did not offer any satisfactory excuse for his failure to enforce collection before the time came for him to settle with his ward, so that he might have been in position to turn over the balance in cash, instead of tendering the note for the major portion of what he conceded to be due. In the face of his own testimony that the loan is good and the note collectible, and his failure to excuse himself, for not having reduced the debt to cash, it certainly cannot be said that the trial court abused its discretion in charging him with the then present value of prin-

cipal and interest. Neither is the position of the ward subject to criticism made by counsel for appellant. In effect she says to the guardian: "I did not require you to loan my funds, neither did I petition the court to direct you to do so; but, so long as you did loan them, I insist that you account for both principal and interest in cash."

3. Appellant complains of the action of the trial court in [6] denying him compensation for his services as guardian. It is urged upon us that the account as allowed and approved by the district court discloses that the estate of this ward was augmented by more than $6,000 in interest derived from loans negotiated by the guardian, and that for his services in the management of an estate of this magnitude, covering a period of nearly fourteen years, he should receive substantial remuneration. Section 7777, Revised Codes, provides: "Every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court or judge in which his accounts are settled deems just and reasonable." But of course this statute contemplates a faithful stewardship. While a mere technical breach of duty which does not result in injury to the ward's estate will not ordinarily justify a court in withholding compensation altogether, a flagrant violation of the duties of the trust will do so. (*Scheib* v. *Thompson,* 23 Utah, 564, 65 Pac. 499; *In re Thompson's Estate,* 101 Cal. 349, 35 Pac. 991, 36 Pac. 98, 508; *Glassell* v. *Glassell,* 147 Cal. 510, 82 Pac. 42; 39 Cyc. 496.)

During the entire term of this guardianship the statute in force required every guardian to return to the court an [7] inventory of the estate of his ward within three months after his appointment, and annually thereafter (Code Civ. Proc., sec. 2985; Rev. Codes, sec. 7774), and, upon the expiration of a year from the time of his appointment, to render an account to the court (Code Civ. Proc., sec. 2986; Rev. Codes, sec. 7775). Not only did the guardian absolutely ignore these provisions of law, but the district court was equally remiss, for

49 Mont.—15

no inventory was ever made, and from the date of appointment in March, 1899, to December, 1912—a period of more than thirteen years—no report was ever required by the court or rendered by the guardian. It is not any answer to say that the guardian managed the estate prudently and accounted for every cent belonging to it. The purpose of these statutory provisions is to furnish a means by which the guardian's management may be checked and his accounts verified. In the present instance the trial court was practically limited to the guardian's own testimony as to what property of this ward came into his possession, and what disposition he made of it, without any means of determining the truth of the testimony. These statutes were enacted to be obeyed, and the conduct of the guardian in ignoring them altogether is inexcusable, and all the more so because he had the advice and assistance of able counsel. In disallowing the guardian's claim for compensation, the trial court doubtless reached the conclusion that, by reason of his mismanagement of the estate, he had forfeited all claim to compensation.

. The report filed by the guardian discloses that prior to May 20, 1902—the date of the first loans of any of these funds—he had received moneys belonging to this ward, aggregating more than $20,000, and he testified that during the same period he received an equal amount belonging to Anna Louise Allard. He was their joint guardian, and all the funds were supposed to have been deposited in his name as guardian with the First National Bank of Missoula. According to his account and his testimony, he should have deposited prior to May 29, 1902, more than $40,000; but his guardian account at the bank discloses that he had actually deposited only $30,524.97. What he did with the balance is not revealed by this record. According to his report and his testimony, he should have had on deposit in his guardianship account at the bank on May 20, 1902, more than $40,000; whereas, his bank account shows a balance in his favor on that day of only $596.12. His account in the bank, from the date of his appointment to the date of these first loans, reads as follows:

| Date. | Checks. | Deposits. | Balance. |
|---|---|---|---|
| Mar. 30 (1899) | | 18,333.32 | |
| Apr. 6 | 12,650.00 | | 5,683.32 |
| Aug. 30 | 5,000.00 | | 683.32 |
| Jan. 18 (1900) | Hayes | 5,000.00 | 5,683.32 |
| 29 | 5,350.00 | | 333.32 |
| Feb. 1 | 30.25 | | 303.07 |
| 13 | 178.00 | | 125.07 |
| May 26 | | 6,666.66 | 6,791.73 |
| 31 | 6,500.00 | | 291.13 |
| May 22 (1901) | 122.75 | | 168.98 |
| Oct. 14 | | 146.66 | 315.64 |
| Dec. 18 | 85.60 | | 230.04 |
| 23 | | 300.00 | 530.04 |
| Feb. 27 (1902) | | 78.83 | 608.37 |
| Mar. 7 | 13.25 | | 595.12 |

When asked to explain these large withdrawals of $12,650, $5,000, $5,350, and $6,500, all within little more than a year from the date of his appointment, and to tell to whom the checks were given, and for what purposes, he was reduced to the miserable expedient of saying, "I cannot tell you; I do not know." The money was not loaned, and there was not any pretense that it was used for any purpose connected with the business of either ward. On that day he had expended for this ward but $125.32, according to his own report. We have, then, laid bare by the account of this guardian and his own testimony the fact that within little more than a year after his appointment he had withdrawn from his account as guardian of these minors $30,000 in round numbers, and yet he is unable to say for what purpose the money was used, and was unable to present any vouchers for it. The fact that this money was all accounted for in the final report does not even suggest a justification for such mismanagement. The guardian further testified:

"Q. Part of the time you carried this account in your own individual name at the First National Bank of Missoula? A. Part of it went into my individual account; there was no effort

made to keep a strict guardian's account, a bank account, none whatever.

"Q. When you carried this account of Eva and Anna, carried it in your own individual name, why you mingled it, of course, with your own fund? A. Yes, sir.

"Q. Do you know how long you carried this account of guardian in your own name, individually, in the bank? A. I could not tell. * * *

"Q. Why did you credit your own individual account with any funds belonging to Eva May Allard, a minor? A. Because it was immaterial where I carried it if I accounted for the funds.

"Q. Haven't you any reason to give the court at this time why you would make any transfer from your account as guarddian? A. None whatever."

We refrain from further criticism of appellant, for it may be that the position assumed by this court in *In re Ricker's Estate,* 14 Mont. 153, 29 L. R. A. 622, 35 Pac. 960, served to lull him and his counsel into a sense of security, or misled them altogether as to the rule of conduct thereafter to be observed in this state in the management of trust funds. We repudiate the doctrine of that case as unwholesome from a moral standpoint, and as erroneous as a statement of the law. A guardian or [8] other trustee has no moral or legal right to mingle trust funds with his own private property, or to profit by the use of the funds belonging to the *cestui que trust,* and any trustee who attempts to do either should be summarily removed. (*Billings* v. *Billings,* 110 Mass. 225; *Gaston* v. *Hayden,* 98 Mo. App. 683, 73 S. W. 938; 1 Perry on Trusts, 6th ed., secs. 275, 447, 463.) In *Sparhawk* v. *Sparhawk,* 114 Mass. 356, the court said: "It is one of the primary duties of a trustee to keep the funds of the trust separate from his private funds, and not, by mingling them together, to expose the trust funds to the risks to which his own property may become liable." Section 5380, Revised Codes, declares that it is a fraud upon the beneficiary for the trustee to use the trust funds for any purpose not connected with the trust. While section 5375, above, was not in

force at the time the decision was rendered in the *Ricker Case,* the rule had been recognized in equity for a century or more that a trustee shall not deal with the trust funds for any purpose not connected with the trust, and shall not profit by malversation of the trust fund.

If this appellant had been dealing with his own property, he would not be expected to remember the purpose for which he gave a particular check ten or twelve years before; but the answer, "I do not know," has no place in the response of one who deals with trust funds. It is his business to know, and, to the end that he may be able to answer intelligently, he is forbidden to mingle the trust funds with his own, and is required to keep a just and true account which will disclose at all times the source of every item of income and the purpose of every item of expense. Appellant may deem himself fortunate that, in addition to the forfeiture of his compensation, the district court did not charge him with interest on the funds withdrawn from the guardian's account, and for which he offered no satisfactory explanation, indeed, no explanation at all.

4. Fault is found with the action of the trial court in fixing [9] the attorney's fee at $250. In the report filed in December, 1912, the guardian asked for only $150 for that purpose; in his amended report the amount was increased to $750. So far as disclosed by this record, there was little done by the attorney who looked after this matter; but in any event the amount to be allowed in any given case is so far within the control of the lower court's discretion that, in the absence of evidence disclosing a clear abuse of that discretion, this court will not interfere. (*Freese* v. *Pennie,* 110 Cal. 467, 42 Pac. 978.)

The order of the district court correcting and allowing the guardian's final report, and directing payment to the ward, is affirmed; as is also the order denying appellant a new trial.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.