STATE OF MONTANA, ex rel. TED KUBURICH, Relator, v. THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT OF THE STATE OF MONTANA, AND, THE HONORABLE JOHN B. McCLERNAN, JUDGE PRESIDING, RESPONDENTS.

No. 10562

Submitted March 22, 1963. Decided April 2, 1963.

380 P.2d 204.

Robert J. Boyd, Anaconda, William R. Taylor (argued orally), Deer Lodge, John N. Radonich (argued orally), Anaconda, Peter A. Schwabe, Portland, Or., for relator.

Emmet T. Walsh (argued orally), Jack M. Scanlon (argued orally), Anaconda, for respondents.

PER CURIAM.

This is an original proceeding arising out of a probate matter. On March 11, 1963, the relator petitioned this court to take original jurisdiction in a situation as follows: In the Estate of George Maricich, deceased, in Deer Lodge County, the inventory reveals cash assets of $23,569.74. Jerry Popovich had been executor of the estate, having been named such in a will dated May 16, 1960. Relator had contested that will in an action in district court, entitled In the Matter of the Estate of George Maricich, Deceased, Ted Kuburich and Nikola Maricic, Contestants vs. Jerry Popovich Executor of the Estate of George Maricich, Deceased, and Milan Boryan, Devisee and Legatee, Proponents. On December 20, 1962, a jury rendered a verdict finding the said will invalid. A motion for new trial was denied on January 2, 1963. Thereafter a notice of appeal was filed and an order granting stay of execution of judgment was entered in part as follows:

"The defendants and Proponents, Jerry Popovich and Milan Boryan, having filed a Notice of Appeal in the above-entitled action, and having provided an Undertaking on Appeal in the amount of Three Hundred and No/100ths Dollars ($300.00) for the costs and damages which may be awarded against them on Appeal, or a dismissal thereof, in the above-entitled action, for the purpose of appealing said action to the Supreme Court of the State of Montana, and which said bond was, on this date approved by the Court.

"NOW, THEREFORE, IT IS ORDERED, AND THIS DOES ORDER, that a stay of Execution is granted to the Defendants and Proponents until the final determination of said Appeal." The will had not required a bond of the executor.

The petitioner had then moved the district court to require the appellants, proponents above, to file a supersedeas bond in the sum of $20,000 pending appeal. On February 13, 1963, the district court denied the motion on the ground that it was without jurisdiction, the appeal having been taken.

The petition then asserted that the executor had distributed, without court approval, the sum of $17,917 to the legatee Boryan as a legacy and that the estate account had a balance of only $1.38.

This court, upon that showing, on March 13, 1963, issued a writ directing that a supersedeas bond be furnished or that contestants show cause why such bond should not be furnished. Such writ was served on the district court, counsel for the executor, and legatee Boryan.

On March 20, 1963, an answer, return and objections to the writ and order to show cause was filed. Hearing was had on March 22, 1963, with counsel for relator, and counsel for the estate, who also represented the district court.

At the hearing, this court was informed that indeed the *entire* corpus of the estate, excepting for the sum of fifty-five cents had in fact been disbursed, all without court approval. Counsel stated that executor fees, attorney fees, inheritance tax, cost of transcript on appeal and other costs, and the legacy had in fact been disbursed without court approval. Besides the fifty-five cents, the only asset remaining out of over $23,000 is an agreement by the legatee to pay the money back if desired. At the hearing it was asserted that the legatee was now unable to pay the money back.

Thus, the situation is that the entire estate is gone, under a will that has been adjudged invalid, and is the subject of appeal without any bond other than the statutory appeal cost bond as recited above.

This is a revelation of an incomprehensible lack of statutory probate process. The recitation above indicates, without more, that this court's duty is immediate and imperative to reacquire the corpus of the estate for whatever disposition is ultimately determined. We are aware that the outcome of the appeal from the judgment of invalidity of the will of May 16, 1960, the possible validity of another will, and many other problems are undecided, but one fact is clear, the estate in its present con-

dition is practically non-existent and immediate steps are necessary to re-establish it.

First of all, we shall briefly answer the contentions made in the answer and return and objections to our writ and order to show cause.

First, the respondent district court was represented by counsel for the executor. The same counsel represented the legatee Boryan in the trial and on appeal. So, we shall, for clarity and practicality, refer to the executor as respondent. The executor is represented to be a man who cannot read or write the English language. Thus, in reality it is his counsel who bears the burden of our discussion.

 The invalid will contained the familiar clause that "I hereby authorize and give to the said Executor and successor Executrix full power and authority to sell, assign, transfer and convey any of the property belonging to my estate, or in which my estate has an interest, and he or his successor shall have full power and authority to lease, sell, transfer and convey or mortgage or dipose of any or all of the property in my estate, whether the same be real, personal or mixed, and convert the same into cash, without any order of Court, or notice should he or his successor deem such to be to the best benefit and advantage of my estate, and to the interest of those interested therein."

The respondent here urges that under the foregoing clause the executor has authority to "unload" everything without court approval. Such, of course, is not the law as indicated in Title 91 of Revised Codes of Montana, 1947.

 Next, counsel asserts that as to the executor, the district court had discretion as to whether or not to require a bond. Assuming for a moment that the district court had discretion, our previous brief recitation of the situation reveals an abuse of that discretion without more.

However, R.C.M.1947, § 91-1105, provides that upon revocation of a will, the powers of the executor must cease. So that

in any event the executor has no more standing under the terms of the will. Any possible protection under the will is now gone. In this connection, too, section 91-1106 provides that costs, if the probate is revoked, must be paid by the party who resisted the revocation, or out of the property of the decedent, as the court directs. Here the revelation shows that even after the judgment, the legatee and executor paid $2,100 for the transcript on appeal without court approval.

Further indicative of the tone of our statutory law is section 91-1718 which provides:

"When a petition is presented, praying that an executor or administrator be required to give further security, or to give bond, where, by the terms of the will, no bond was originally required, and it is alleged that the executor or administrator is wasting the property of the estate, the judge may, by order, suspend his powers until the matter can be heard and determined."

This court in Hartley v. Hardy, 133 Mont. 443, 445, 325 P.2d 694, had this to say:

"* * * We are, however, controlled by statutes which come into play when the will is revoked under which the letters in question were issued. The statutes here controlling are sections 91-1104 and 91-1105, R.C.M.1947, which are as follows:

"Section 91-1104. 'In all cases of petitions to revoke the probate of a will, wherein the original probate was granted without a contest * * * If * * * the will is for any reason invalid * * * the probate must be annulled and revoked.'

"Section 91-1105. 'Upon the revocation being made, the powers of the executor or administrator with the will annexed must cease; but such executor or administrator shall not be liable for any act done in good faith previous to the revocation.'

"Thus, in view of our decision in appeal No. 9562 denying probate to the Frank E. Hardy will for lack of testamentary

capacity and for undue influence exerted upon the testator by Charles B. Hardy, and his father, Charles J. Hardy, the letters issued to Charles B. Hardy necessarily must be revoked, without reference to a bona fides of his residence and no matter what errors are specified by the appellant or cross-assigned by the respondent in this appeal.

"* * * The district court's order refusing to revoke the letters of administration assumes bona fide Montana residence. Under our decision in the will contest, the order must be overruled. We have no doubt, however, that had our decision in the will contest been before the district court at the time the petition for revocation of letters was heard, the district court would have ordered the letters revoked under the authority of R.C.M.1947, § 91-1104, as we do here. See discussion in 2 Bancroft, Probate Practice (2d ed.), § 240, p. 30.

"As above stated, Charles B. Hardy, the administrator, is not charged with mismanagement in this appeal. Under R.C.M. 1947, §§ 91-1104 and 91-1105, he is relieved of personal liability for his bona fide acts of administration up to the date the probate is annulled and revoked. But bona fide of a nature more substantial than the technicalities of the respondent administrator's status are here involved, and under R.C.M. 1947, § 91-1106, he is, as the party unsuccessfully resisting the revocation of probate, personally chargeable with the costs of the within action, appealed here as No. 9563, 'as the court directs.' * * *

"Respondent's assertion of bona fide residence must also be weighed against the fact that he, along with his father who nominated him as administrator, was charged in the will contest, appeal No. 9562, with having exerted undue influence in procuring Frank E. Hardy to make the will we have held invalid; that a jury answered special interrogatories propounded in the will contest not only to the effect that the testator uncle was not competent to make the will under which respondent's letters were issued, but, further, that he made it

under undue influence of Charles J. Hardy, respondent's father, and of respondent Charles B. Hardy. Thus we state that bona fides of a nature more substantial than the technicalities of residence are involved.

"Probate managers are fiduciaries of the court. Their office is upon a trust. They must be above suspicion. Mr. Justice Holloway once described their obligation as those of 'faithful stewardship'. In re Allard's Guardianship, 49 Mont. 219, 225, 141 P. 661. * * * the 'law does not look with favor upon the administration of estates by a person where conflicts in the performance of his duty are likely to arise.' * * * 'The right to administer is valuable; but so are the rights and the peace of mind of other persons interested.' * * * ' "An executor or administrator is deemed unsuitable when he has *any conflicting personal interest which prevents him from doing his official duty.*" ' Emphasis supplied.

"The order appealed is set aside. The letters of administration of the estate of Frank E. Hardy, with will annexed, heretofore issued to Charles B. Hardy, are annulled. The administrator is removed. The costs of the within action are against Charles B. Hardy, personally, not against the Frank E. Hardy estate, but his ordinary fees as administrator *de bonis non* and the fees of his counsel are allowed.

"The cause is remanded to the district court of Richland County for further proceedings, not inconsistent with this opinion. Nothing should be construed herein as nullifying previous actions taken in good faith in the probate, to the end that the probate of the estate of Frank E. Hardy shall be brought to a speedy and orderly termination without further delay. [Citing cases.]"

The foregoing quotation of this Court's discussion and holding in the Hartley v. Hardy case, supra, indicates what must be done here. In effect, since the executor here has been removed, no one is left to preserve the estate. It is the opin-

ion of this court that a special administrator should be appointed to reacquire or secure the corpus of the estate.

In view of the requirement of section 91-1105, R.C.M.1947, that upon revocation being made, the powers of the executor must cease, the district court abused its discretion, if any it had, in granting an order staying execution.

The motion to quash that portion of the writ of this court of March 13, 1963, which vacated and annulled the district court's order staying execution, is denied.

It is ordered that a writ shall be issued, directed to the respondent court requiring said court to appoint a special administrator, under section 91-1801, R.C.M.1947, who shall reacquire the corpus of the estate not expended bona fide in the administration, or who shall acquire sufficient security therefor by a bond or otherwise from the former executor Popovich and legatee Boryan. As previously noted, another will exists and is in the process of being adjudicated. Should that will be admitted to probate, the appointment of an executor under its terms would obviate the appointment of a special administrator, but that executor should proceed as above indicated.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.