No.   95-103

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF THE CONSERVATORSHIP
OF MAZIE RICHARDSON,

An Incapacitated and Protected Person.

FILED

NOV 02 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Keith Tokerud, Jon S. McCarty; Scott & Tokerud,
Great Falls, Montana

For Respondent:

Ward E. Taleff; Alexander, Baucus, Taleff & Paul,
Great Falls, Montana

J. Daniel Hoven; Browning, Kaleczyc, Berry & Hoven,
Helena, Montana


Submitted on Briefs:   July 6, 1995

Decided:   November 2, 1995

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellant Mazie Ross appeals from an order of the Eight Judicial District Court, Cascade County, denying Ross' requested relief regarding the conservatorship of Mazie Richardson, deceased, and denying Ross' request for attorney's fees. We affirm.

Background

In October 1981, respondent Gene B. Daly was, by court order, appointed conservator of Mazie Richardson's estate. Richardson was an incapacitated and protected person. Ross is her daughter and only surviving child. Pursuant to § 72-5-424, MCA, and the court-ordered conservatorship appointment, Daly was required to file an inventory of the estate and annual accounting of estate administration. From its beginning, this conservatorship was subject to disputes between Daly and Ross and her sons.

After a November 1984 hearing, the District Court appointed respondent Jack P. Stevens, P.C., C.P.A., as co-conservator to serve with equal and independent authority with Daly. The court further ordered that Stevens file an estate inventory within 90 days, account for the period between October 1981 and November 1984, and account annually for the estate's administration. Mazie Richardson died in September 1991 and Ross was appointed personal representative of her estate.

In December 1991, Ross petitioned the court to order the co-conservators to file an estate inventory and accounting. The court ordered that Daly file an inventory within two weeks and that both conservators file an account of estate administration within five

2

weeks. These tasks were not completed. Ross alleges that Daly was unwilling, while Daly alleges that health problems prohibited him from complying.

As a result of Daly's alleged inaction, Ross requested a conference with the District Court. In June 1992, Ross and her counsel held the conference with Judge Joel Roth; Judge Roth subsequently held Daly in contempt and awarded Ross her attorney's fees and costs in an amount to be determined at a later hearing. Daly was not notified of this conference. In July 1992, Daly filed an accounting of the conservatorship estate, prepared by a private accounting firm, with the District Court. Ross objected to this accounting and requested a hearing to clarify Daly's accounting and to determine her attorney's fees and costs from the June contempt proceeding. Daly did not appear at the hearing scheduled to determine these issues, held in December 1992. Only Ross presented testimony and the court took the matter under advisement.

In January 1993, Daly requested the court reopen the matter as well as continue the hearing on Ross' objections and request for attorney's fees and costs. On the April 1993 date set for the rehearing, Judge Roth recused himself. The matter was transferred to Judge Robert S. Keller. In November 1994, Judge Keller conducted a re-hearing on all issues and on December 31, 1994, issued an order denying Ross' requested relief. This appeal followed.

Issues

We restate Ross' issues as follows:

3

1. Did the District Court err by ruling that Daly and Stevens are not liable for misfeasance or for the alleged insufficiencies in the accounting of the estate administration?
2. Did the District Court err by allowing the co-conservators their fees?
3. Did the District Court err by disallowing Ross her attorney's fees?

Standard of Review

We use a three-step test to determine whether the findings are clearly erroneous. First, if a court's findings are not supported by substantial credible evidence, they are clearly erroneous. Second, if a court has misapprehended the effect of the evidence, its findings are clearly erroneous. Third, if a review of the record leaves the reviewing court with the definite and firm conviction that a mistake has been committed, the lower court's findings are clearly erroneous. Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We do not reweigh the evidence before the district court, evaluate witness credibility, or substitute our judgment for that of the district court. See Detienne Associates Ltd. v. Montana Rail Link, Inc. (1994), 264 Mont. 16, 22, 869 P.2d 258, 262. "We review conclusions of law to determine whether the district court's interpretation of the law was correct." In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93.

1. Did the District Court err by ruling that Daly and Stevens are not liable for misfeasance or for the alleged insufficiencies in the accounting of the estate administration?

Claims against Daly

The District Court described this situation as a family feud, a characterization that we cannot challenge. At the heart of Ross'

4

arguments is Daly's alleged misfeasance and deficient accounting. Because of health problems, Daly was unable to assist with the District Court's December 1994 hearing. The District Court found that the maximum disputed amount is $38,000, which includes $22,000 of conservator fees paid to Daly ($10,000 is identified as conservatorship fees and $12,000 is identified as "possible" conservatorship fees).

The District Court found that:

> any amounts of money not directly traceable to the care of Mazie Richardson are more than offset by convincing evidence illustrating that Mr. Daly and his wife Ruth utilized their personal funds to set up an income-producing account with Waddell and Reed [an investment firm]. The only credible evidence submitted to the Court establishes that Mr. Daly and his wife set up an income producing account by utilizing $24,000 of their own personal funds.

This account provided Richardson with $150-200 per month from the time of its inception in 1986 until her death in 1991. The District Court heard evidence that the redemption value of the Waddell and Reed account was $27,315 and it paid dividends of $13,094 over the life of the account. The District Court found that "a total of over $40,000 of principal and dividends generated from the personal funds of Mr. Daly and his wife went directly to the care of Mazie Richardson and upon her death to her estate."

The court concluded that the 1992 inventory was as complete and accurate as possible. It appears that Daly did not cooperate with all court orders and that Ross and her sons did not fully cooperate with Daly. The District Court concluded that Daly was not able to prepare an inventory of the estate's assets but Daly

5

did know what he had received and spent and he therefore *could have* made an annual accounting. The District Court balanced this deficiency against the fact that Daly provided for Richardson's best interests and Daly substantially augmented the assets of the conservatorship.

We now apply the three-part test from *DeSaye*. The District Court's findings are supported by substantial evidence. Further, the District Court did not misapprehend the evidence in the record. Finally, after a review of the District Court's order, we have a firm conviction that a mistake was *not* committed. The record supports that the District Court's findings were not clearly erroneous. We will not substitute our judgment for that of the District Court.

Finally, we affirm the District Court's conclusion that in light of Daly's present health concerns no useful purpose can be served in examining questions of contempt or sanctions.

<u>Claims against Stevens</u>

The District Court found that Stevens did not receive any fees for his conservatorship duties and no evidence was presented to contradict the finding that the only money paid to Stevens was for out-of-pocket expenses. The District Court also found that Ross' conduct and prior pleadings support the finding that Stevens was not jointly liable for the acts of Daly. The record supports that Stevens properly collected and accounted to the estate for all funds and assets collected by him or in his possession. Finally, the District Court held that Stevens did not consent to Daly's

6

failure to file an inventory, nor did Stevens negligently allow or enable Daly to commit a wrongful act. Our application of *DeSaye* is the same for Stevens as it was for Daly. The record supports that the District Court's findings were not clearly erroneous. We will not substitute our judgment for that of the District Court.

2. Did the District Court err by allowing the co-conservators their fees?

The District Court considered that Daly has no memory of the proceedings and no personal assets. The District Court applied the doctrine of *in pari delicto* to conclude that the parties should be left the way they were found. The District Court noted that to disallow Daly his fees would require him to pay Ross $8,000. The District Court, as a court of equity, concluded that such a payment would be "fundamentally wrong." Particularly in light of Daly's care for Richardson, we agree.

As we held in issue one, the District Court did not err in its findings regarding the co-conservators' conduct and liability. Further, the District Court correctly found that Richardson was well taken care of and her estate was augmented by Daly's conduct. It would be unequitable and manifestly unjust to disallow the co-conservators' fees when these facts are combined with the contentious conduct of Ross and her sons and the apparent ongoing family dispute regarding the conservatorship.

3. Did the District Court err by disallowing Ross her attorney's fees?

The District Court properly considered that attorney's fees are awarded where authorized by statute or contract. This case

7

does not fit into either of those categories and there is no equitable basis for awarding fees in this case. The District Court properly interpreted the law regarding Ross' attorney's fees. Ross' arguments to the contrary are not supported by the record or law.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter, and West Publishing Company.

_____
Justice

We concur:

_____

_____

_____
Justices

8

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with those parts of the majority opinion which affirm the District Court's judgment in favor of Jack G. Stevens and deny attorney fees to the personal representative of Mazie Richardson's estate.

I dissent from that part of the majority opinion which allows the respondent, Gene B. Daly, to recover fees for his services as conservator of Mazie Richardson's estate.

It is not necessary to conclude that any of the District Court's findings of fact are clearly erroneous in order to conclude that Daly was not entitled to a fee for his services. A conservator who flagrantly violates his obligations to the estate that he manages is not entitled to a fee. The following findings of the District Court clearly establish that Daly flagrantly violated his duties:

> 3. [Gene B.] Daly, of Helena, Montana, was appointed as Conservator of the Estate on October 20, 1981. Pursuant to § 72-5-424, M.C.A., and Court Order, Daly was required to file an inventory of the Estate within 90 days. In addition, pursuant to § 72-5-438, M.C.A., and Order of the Court, Daly was required to account annually for his administration of the Estate.
>
> . . . .
>
> 5. Jack Stevens was appointed as Co-conservator of the Estate of Mazie Richardson on November 14, 1984.
>
> . . . .
>
> 11. Following the auction of the personal property, the sale of the residence and recovery of the stock for the Estate, Stevens completed each item on the detailed memorandum he had advised the parties he would undertake

9

as Co-conservator. The only exception was the completion of the final inventory, a task he could not complete without the assistance of Daly. Stevens did prepare reconciliation of the Estate's bank account and a summary of the Estate in 1984, but thereafter was unable to obtain the cooperation of Mr. Daly or information necessary for Stevens himself to complete an inventory or accounting.

. . . .

13. Between approximately 1985 and 1991, Stevens attempted numerous times to obtain from Daly a final accounting and inventory. Stevens prepared one income tax return for the Estate, but Daly indicated he would be responsible for filing all others. Stevens' efforts to obtain the inventory and accounting information or documentation and to prevail on Daly to complete his duties included letters to Daly and telephone or personal conversations with Joseph Marra, counsel for the Estate and a long-time friend of Daly. In each instance, Marra prevailed on Stevens not to resign or take other steps, indicating that he would be able to convince Daly to provide an accounting. . . .

. . . .

16. Shortly after Mazie Richardson passed away Mr. Marra finally determined that he would not be successful in obtaining a final inventory from Daly. He withdrew as counsel. Upon Mazie Richardson's death Mazie R. Ross was appointed personal representative of her estate. Mr. Stevens was in the process of retaining counsel to seek his release as Co-conservator when the present proceedings were initiated.

17. On December 16, 1991 [more than ten years after Daly was first appointed conservator], Mazie R. Ross filed a Petition in this matter seeking an order against the Co-conservators directing them to file an inventory and account for their administration of the estate. She also sought the discharge of the Co-conservators and turn-over of the residue of the estate to her as personal representative.

. . . .

25. During the time period of 1984, following Mr. Stevens' appointment, through 1991, Mr. Daly failed to file an annual accounting. However, on July 24, 1992, Mr. Daly, in response to orders of the Court, filed a

10

final accounting, prepared by Anderson Zurmuehlen Co. The final accounting is representative of the activities undertaken by Mr. Daly on behalf of Mazie Richardson for the preceding ten years. The final accounting demonstrates that the majority of the disbursements from the conservatorship account can be directly attributable to the care of Mazie Richardson.

26. The final accounting shows that there is approximately $38,000 which cannot be directly attributable to the care of Mazie Richardson. Of that amount, $10,000 is identified as conservatorship fees, and another $12,000 is identified as "possible" conservatorship fees. Unfortunately, Mr. Daly is unable to assist the Court in any further delineation of the $38,000 and whether it was attributable directly to the care of Mazie Richardson because of his present physical and mental condition, which this Court recognizes.

. . . .

28. After her appointment as personal representative, Mazie Ross petitioned the Court on December 16, 1991, to order the co-conservators to file an inventory and accounting. The Court issued its Order on January 16, 1992, giving conservator Daly until January 31, 1992, to file an inventory and both conservators until February 21, 1992, to file an account of the administration of the Estate.

29. Stevens filed a partial accounting which covered only the disposition of the ward's personal property and sale of her home in 1986. It did not list the Estate's income and expenses. Nor did it list the Estate's assets on hand and available for distribution to the ward's probate Estate.

30. Daly did not comply with the Court's Order to file an inventory and accounting by the dates set forth therein.

(Emphasis added.)

As conservator of Mazie Richardson's estate, Gene B. Daly was required to file an inventory of her assets, and file it with the District Court within 90 days from the date of his appointment. He was also obligated to keep records of his administration of her

estate and provide it to any interested person upon that person's request. Section 72-5-424, MCA. Additionally, Daly was required by law to account to the court annually regarding his administration of the Richardson estate. Section 72-5-438, MCA. For over ten years while he served as conservator of Richardson's estate, he did neither. Even after being ordered repeatedly to do so by the District Court, he did neither. Finally, after being held in contempt of court, he filed an inventory of assets which the District Court liberally found accounted for a "majority" of Richardson's assets, but which disclosed that $10,000 had been spent on conservatorship fees, and that $28,000 of expenses cannot be accounted for.

While the District Court found that Daly's administration of the Richardson conservatorship was impeded by interference from Mazie Ross and her sons, the fact is that the last documented interference by Mazie Ross and her sons occurred prior to February 18, 1983. On that date, the District Court granted Daly's request for an injunction and ordered Ross and her sons to vacate Richardson's house, pay rent for the time that one of the sons had resided there, and return to the estate items of personal property which had been removed. Whatever Richardson and her sons did from 1981 until 1983, does not account for Daly's repeated dereliction of responsibility and frustration of Stevens's efforts from 1983 until 1992.

The District Court excused Daly's inability to account for approximately $28,000 of conservatorship funds and the payment to

12

himself of $10,000 as a conservator fee based on the assumption that the sum of $24,000 which was placed in a Waddell and Reed account and used for Richardson's benefit came from Daly and his wife. However, the source of those funds was anything but clear. Furthermore, the fact that Daly and his wife _may_ have at some time or other made a gift to Mrs. Daly's mother does not justify the award of a conservatorship fee to a conservator who has totally neglected his responsibilities under the law.

This Court previously considered the propriety of a conservator fee under similar circumstances in _In re Allard Guardianship_ (1914), 49 Mont. 219, 141 P. 661. In that case, the district court also interpreted the propriety of fees to a conservator who, for a period of thirteen years, had failed to account for the estate's assets or provide an inventory of those assets. The law at that time provided for reasonable compensation to a conservator, just as § 72-5-432, MCA, provides now. However, this Court held that the district court correctly denied attorney fees in that case for the following reasons:

> While a mere technical breach of duty which does not result in injury to the ward's estate will not ordinarily justify a court in withholding compensation altogether, a flagrant violation of the duties of the trust will do so.
>
> During the entire term of this guardianship the statute in force required every guardian to return to the court an inventory of the estate of his ward within three months after his appointment, and annually thereafter (Code Civ. Proc., sec. 2985; Rev. Codes, sec. 7774), and, upon the expiration of a year from the time of his appointment, to render an account to the court (Code Civ. Proc., sec. 2986; Rev. Codes, sec. 7775). Not only did the guardian absolutely ignore these provisions of law,

13

but the district court was equally remiss, for no inventory was ever made, and from the date of appointment in March, 1899, to December, 1912--a period of more than thirteen years--no report was ever required by the court or rendered by the guardian. It is not any answer to say that the guardian managed the estate prudently and accounted for every cent belonging to it. The purpose of these statutory provisions is to furnish a means by which the guardian's management may be checked and his accounts verified. In the present instance the trial court was practically limited to the guardian's own testimony as to what property of this ward came into his possession, and what disposition he made of it, without any means of determining the truth of the testimony. These statutes were enacted to be obeyed, and the conduct of the guardian in ignoring them altogether is inexcusable, and all the more so because he had the advice and assistance of able counsel. In disallowing the guardian's claim for compensation, the trial court doubtless reached the conclusion that, by reason of his mismanagement of the estate, he had forfeited all claim to compensation.

*In re Allard*, 141 P. at 664 (citations omitted).

Likewise, in this case, whether Daly actually managed Mazie Richardson's estate in her best interest is not the point. No one will ever know. There is no record of what was done with her assets for a period of over ten years. By the time Daly was finally forced to account for her assets, he was no longer capable of recalling what he had done with them. For all practical purposes, no one knows the full extent of the assets that he managed or what was done with all of her property. The statutes regarding an inventory and an annual accounting were designed to prevent the kind of uncertainty that now exists. Daly not only ignored those statutes, he ignored repeated efforts by his co-conservator to gather the necessary information to comply with them; he ignored previous requests by the estate's attorney to comply with them; and most seriously, he ignored repeated court

14

orders that he comply with them. When he finally did make an effort to comply with them, he was unable to completely do so due to the passage of time, his failed memory, and the impossibility of reconstructing what had happened during the previous ten years. According to our prior decision in *In re Allard*, a flagrant violation of a conservator's duties is a sufficient basis for denying that conservator a fee for his services. Under the undisputed facts in this case, I conclude that Daly flagrantly violated his duties as conservator and that the District Court abused its discretion when it allowed him to retain fees for acting as a conservator on "equitable" grounds.

As a practical matter, I realize that Mazie Ross may be no better off had the District Court ordered Daly to return the fees that he had received. However, as a matter of precedent and principle, I also believe it is inappropriate for the courts to sanction Daly's conduct in this case.

For these reasons, I dissent from the majority opinion.

_____
Justice

15

Justice James C. Nelson specially concurring.

I concur in our opinion to affirm the District Court's judgment in favor of Jack G. Stevens and against Mazie Richardson's estate.

I also agree in substance with Justice Trieweiler's dissent as regards our opinion in favor of Gene B. Daly to recover fees for his services as conservator. Notwithstanding, I have signed the majority opinion because I am convinced that, given Daly's present circumstances--he is apparently under a conservatorship and is penniless--there is little, aside from moral victory, that will be accomplished in sending this case back for still further litigation. That which starts out badly usually ends worse. This case proves the rule.

_____
Justice

16