No. 84-466

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

LOCAL UNION NO. 400 OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS,

Plaintiffs and Respondents.

-vs-

VINCENT J. BOSH, ROBERT VOYTOSKI,
JOHN C. BALL, BOB F. DAVIS, and
JAMES KRUSE and FIDELITY & DEPOSIT
COMPANY OF MARYLAND,

Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cannon & Sheehy; Edmund F. Sheehy, Jr. argued,
Helena, Montana

For Respondent:

Gough, Shanahan, Johnson & Johnson; Ronald F. Waterman
argued, Helena, Montana
Goetz, Madden & Dunn; James Goetz, Bozeman, Montana

Submitted: December 5, 1985

Decided: February 27, 1986

Filed: FEB 2 1986

_Ethl M. Harrison_
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The defendants appeal from a jury verdict and judgment in favor of plaintiffs and respondents, Local Union No. 400 of the International Union of Operating Engineers (hereinafter Local 400), in Lewis and Clark County District Court. Defendants question Local 400's standing to file the action; whether Local 400 failed to establish it was entitled to an accounting, thus barring recovery; whether Local 400 should have been required to answer certain interrogatories; whether jury instructions on defendants' fiduciary duty to the Union, constructive fraud and the burden of proof, among others, were improper; and whether substantial evidence supported the verdict. We affirm.

Vincent J. Bosh held the position of business manager for Local 400 from 1976 until August 1981. Robert Voytoski and Bob F. Davis sat on Local 400's executive board and both were assistant business managers as well.

In April 1981, Bosh announced he would not run for reelection in the upcoming August 1981 elections for health reasons. He then went on sick leave but continued to make all of the major decisions pertaining to Local 400 and drew his regular salary. Voytoski and Davis handled Local 400's day to day affairs. Neither Voytoski nor Davis were candidates for business manager. After William Burlingame won the August election, a number of candidates filed protests. As a result, he was not installed into office as scheduled. Local 400's executive board installed Voytoski as business manager pro tem. Davis continued as an assistant business manager. Jack Ball, not a party on appeal, also

2

acted as an assistant business manager pro tem following the August election. Burlingame's supporters filed protests to the International President of the Union who ordered that the pro tem administration vacate office and install the newly elected officers. This occurred on September 30, 1981.

After the new officers assumed their duties, Burlingame hired an accountant to conduct a special audit for January through September 30, 1981. The audit report criticized Bosh's administration. The results demonstrated an increase in expenditures, a large decline in value of assets and a large increase in liabilities, despite a steady income from dues.

In June 1982, Local 400 filed suit against Bosh, Voytoski, Davis and the other defendants. The complaint requested an accounting, reimbursement of misappropriated funds, production of Union files and indemnification to the Union from the bonding company joined in the suit. Some allegations in the action relied on 29 U.S.C. §401, et. seq. of the Labor Management Reporting and Disclosure Act (LMRDA). Defendants removed the litigation to federal court and then moved to dismiss the complaint arguing Local 400 had no standing to raise the issues. The federal district court dismissed the claims and remanded the action back to state district court. The defendants then made another motion to dismiss and Local 400 requested reinstatement of the claims under federal law. The state district court denied both requests.

In May 1984, six weeks before trial, the District Court allowed Local 400 to amend its complaint to assert theories of constructive fraud and wrongful conversion of property.

On the day of trial, the claim against the bonding company was severed from the claims against Bosh and the other defendants. At the close of all the evidence, the defendants moved for a directed verdict. As a result, the District Court dismissed all claims against defendant James Kruse and some of the claims against the four remaining defendants. The jury found in favor of defendant John C. Ball; assessed damages against Bosh, Voytoski and Davis for $3,000; and assessed damages against Bosh individually for $46,404.

Bosh, Voytoski and Davis appeal from the jury verdict and subsequent judgment entered thereon by the District Court. They present five issues on appeal:

(1) Did the District Court correctly deny defendants' motion for summary judgment claiming Local 400 lacked standing or the capacity to file the action?

(2) Did the District Court correctly deny defendants' motion for a directed verdict claiming Local 400 failed to establish it was entitled to an accounting?

(3) Did the District Court correctly deny defendants' motion to dismiss claiming Local 400 should have been required to answer interrogatories submitted by defendants?

(4) Did the District Court properly instruct the jury?

(5) Was the jury verdict supported by sufficient evidence?

In the first issue, appellants contend that Local 400 failed to exhaust the internal remedies prior to taking action in district court. They urge this Court to adopt the position that a union lacks standing to sue whenever it fails to exhaust administrative remedies available under the union's constitution. Montana has not yet addressed the

4

question of whether an action for breach of fiduciary duty will stand prior to an exhaustion of internal remedies. Other state courts have required the pursuit of internal remedies when the dispute concerns internal matters such as union policy, doctrine or discipline of members. See, e.g. Williams v. Vickers (Nev. 1958), 321 P.2d 586 (union members' action to enjoin union officers from acting contrary to international union's constitution denied for failure to exhaust internal remedies). In De Monbrun v. Sheet Metal Workers Internat'l Ass'n. (Cal. 1956), 295 P.2d 881, the California court held that the plaintiffs' actions for misappropriation and mismanagement of funds against a union officer could be pursued in state court despite their failure to exhaust internal remedies because the actions concerned protection of property rights.

> ". . . [I]f property rights are involved in the absence of an express agreement to exhaust the remedies provided within the association, the member may resort to the courts without using the within-the-Union remedies. And where property rights are involved the member need not first pursue the remedies within the association, if they would be futile, illusory, or vain."

Nissen v. International Brotherhood, Etc. (Ia. 1941), 295 N.W. 858, 866, cited in De Monbrun, 295 P.2d at 894.

The case at bar concerns protection of union property and does not deal with internal matters. Local 400 pursued their action in District Court to recover money and property lost through defendants' breach of fiduciary duty owed to the Union and its members. This is not a controversy over discipline, doctrine or policy. The remedy available through intra-union procedures provides for discipline to and possible expulsion of a member who violates his obligation

5

with respect to Union monies, but does not provide for any recovery of the misappropriated funds. Since Local 400's cause of action requested recovery of Union money and property, a remedy not available through union procedures, exhaustion of Union remedies would not afford the desired result and would be futile. We hold that the District Court correctly determined Local 400 need not exhaust internal remedies and therefore could pursue this action in District Court. Defendants' motion for summary judgment was properly denied.

Defendants urge, in the second issue, that because Local 400 failed to prove it had made a demand for and had been refused an accounting, the District Court should have granted them a directed verdict. Generally the demand for an accounting need not be in any particular form, so long as it is sufficiently explicit to leave no room for doubt in a defendant's mind that the plaintiff intended to demand an accounting. Johnston v. Silver (1921), 59 Mont. 195, 196 P. 515. Local 400 relied on a letter sent to each of the Union officers asking for "answers and/or comments" to a list of questioned costs and remarks, as a sufficient demand for an accounting and defendants' lack of response as a refusal. When defendants made their motion for a directed verdict at the close of Local 400's case, the District Court ruled that the question was one of fact for the jury and denied the motion. The jury could have found, on this evidence, that there had been both a demand and refusal. Since there was substantial evidence on both sides of this dispute, the District Court correctly refused to grant a directed verdict. Gunnels v. Hoyt (Mont. 1981), 633 P.2d 1187, 38 St.Rep. 1492.

6

We note that the jury did not award an accounting but instead independently calculated the money due from defendants. Defendants assert, in this appeal, that any verdict in favor of Local 400 depends on their entitlement to an accounting. We disagree. The action for an accounting was separate from the causes of action for constructive fraud, breach of fiduciary duty and conversion of property. As such, even if a directed verdict had been appropriate on this issue, the District Court's refusal to so order is harmless error, given the jury verdict.

In their third issue defendants argue that this action should have been dismissed prior to trial when Local 400 failed to answer certain interrogatories. Local 400 had objected to the interrogatories seeking discovery of the legal theories of its complaint. While the District Court's order does not specify why it denied defendants' motion to dismiss, it appears from the record that the legal theories were readily available in earlier documents and briefs. By the time the hearing on this motion was held in January 1984, the parties had briefed and argued the grounds for removal to federal court, a motion to dismiss in federal court, the grounds for the return to state court, and another motion to dismiss in state court which resulted in dismissal of claimed violations of 29 U.S.C. §401, et seq., of the LMRDA. Local 400 fully set forth their reasons why mismanagement and misappropriation of funds gave rise to a cause of action under Montana law when replying to these motions. The District Court did not abuse its discretion when it sustained Local 400's objections to these interrogatories and refused to dismiss the claims.

Defendants claim error in a number of jury instructions in the fourth issue. They claim that the instructions on (1) the duty owed by defendants to Local 400, (2) the burden of proof and (3) constructive fraud confused the jury; that the District Court erred in refusing their proposed instruction No. 10; and that the instructions were slanted in favor of Local 400.

The argument on the nature of the fiduciary duty owed by the defendants, as union officers, to Local 400 goes to the heart of the Union's case. Defendants argue that the care required to satisfy any fiduciary duty of an officer to a union should be minimal; i.e., if the officer complies with the union's constitution and by-laws, the fiduciary duty is satisfied. To so rule could leave predatory actions of officers insulated from suit. We agree with the Pennsylvania Supreme Court that:

> [I]t would be anomalous if, in handling the funds of a labor organization, its officers and similar agents were not held to standards of good faith similar to those imposed upon the officers and directors of a corporation.

Local No. 163, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America v. Watkins (Pa. 1965), 207 A.2d 776, 781. The better rule considers the duties, powers and obligations of the constitution and by-laws and imposes on an officer the requirement to act reasonably and prudently, as any trustee of funds and property belonging to another person or entity would act.

Federal law offers additional authority on the fiduciary nature of defendants' positions as union officers.

8

Congress, when enacting 29 U.S.C. §501 of the LMRDA, accorded federal protection to rights existing under state law and intended to hold union officers responsible as fiduciaries for funds entrusted to them. Some of that section's legislative history illustrates the applicable fiduciary principles:

> The general principles stated in the bill are familiar to the courts, both State and Federal, and therefore incorporate a large body of existing law applicable to trustees, and a wide variety of agents . . .
>
> H.R. Rep. No. 741, 86th Cong., 1st Sess. 81 (1959).
>
> The bill imposes upon labor union officials the responsibilities of a fiduciary. The exact application of general fiduciary principles always takes into account the nature of the enterprise. A corporate director is not judged in exactly the same fashion as a family trustee, but both are subject to the highest duty of fiduciary responsibility. The bill establishes exactly the same test for union officials.
>
> 105 Cong. Rec. A6573 (1959), Leg Hist. 1051.

The Fiduciary Duties of Union Officials Under Section 501 of the LMRDA, 52 Minn.L.Rev. 437, 446 (1967).

In this case, the District Court instructed the jury on the duty of fiduciary responsibility by comparing it to a trust relationship; by stating that, as fiduciaries, the officers were reqired to act prudently; and by allowing the jury to consider the duties, powers and obligations in the Union constitution and by-laws. These instructions were consistent rather than confusing, and accurately set forth the nature of defendants' responsibilities, as Union officers, to Local 400.

9

The defendants also claim that the instructions on the burden of proof confused the jury. The court gave a general instruction that the party who asserts the affirmative of an issue, has the burden of proving that issue by a preponderance of the evidence. Following the instructions on the fiduciary nature of the defendants' position, the District Court instructed that if a fiduciary profits personally from the use or receipt of union funds, the burden shifts to the fiduciary to show he acted reasonably. Finally, in an instruction which referred to the defendants' duty to keep proper accounts, the District Court instructed that the person with the duty has the burden of proving that he is entitled to the credits he claims. Shifting the burden to defendants if Local 400 proved that they profited personally from union funds is nothing more than moving the burden to the party "who would suffer a finding against him," if no additional evidence were produced. Section 26-1-401, MCA. This instruction did not contradict the general instructions and was not inaccurate. The instruction referring to keeping proper accounts and the burden of proof followed a common rule in an action for an accounting, that the agent or person who has the funds in his control has the burden of proving a proper disposition of those funds. See, e.g., 3 Am.Jur.2d §348, Agency, p. 706 and 90 C.J.S. § 414, Trusts, p. 782. This instruction specifically referred to the keeping of proper accounts. As such, it accurately stated the law, was not improperly slanted toward Local 400 and did not contradict the general instruction.

Defendants contend that the instructions on constructive fraud should not have been given because this

case did not involve a contract and constructive fraud is not applicable to an action for an accounting or for breach of a fiduciary duty. This contention inaccurately characterizes the requirements for an action for constructive fraud. Dealings or transactions between parties who have a fiduciary relationship provide a sufficient contract to support such an action. Here, the questioned transactions involving Union money and property changing hands, combined with the duties and obligations between the officers and Local 400, established the necessary relationship between the parties. This relationship, along with the other elements established at trial, supported the District Court's giving of instructions on constructive fraud.

Defendants' instruction No. 10, refused by the District Court, stated that money paid by one to another was due to the other, taken from § 26-1-602(7), MCA. The District Court refused it as confusing and incorrect as it applied to this case. The instructions, as a whole, adequately describe the applicable law. Under the circumstances, the District Court did not err by refusing this instruction.

In the last part of the fourth issue, the defendants contend that a number of instructions were biased in Local 400's favor. Most of these challenged instructions are discussed above. Of the two remaining instructions to be discussed, we note first that defendants made no objection to court's instruction No. 14. Even if the giving of this instruction had been error, an instruction not objected to cannot be the basis for a reversal on appeal.

The last challenged instruction, No. 34, defined damages and stated generally the measure of damages. Other

subsequent instructions elaborated on the measure of damages and were given without objection from defendants. Court's instruction No. 34, along with the other damage instructions, adequately reflects the definition of damages and their measure. The evidence and testimony given by Local 400's witnesses at trial could have supported a larger verdict. These instructions do not indicate any bias in favor of Local 400.

We hold that the District Court properly instructed the jury.

The final issue raised by defendants questions the sufficiency of the evidence to support the jury verdict. A jury's verdict, if supported by substantial evidence, will not be overturned on appeal. Gibson v. Western Fire Ins. Co. (Mont. 1984), 682 P.2d 725, 41 St.Rep. 1048. The evidence may be weak or conflict with other evidence but still adequately support the verdict. Gunnels, 633 P.2d 1187, 38 St.Rep. 1492. Defendants contend that because no one testified as to the specific amount of money they might owe the Union, the verdict awarding money damages should be reversed. The jury heard evidence on mismanagement and self-dealing with regard to Union funds and property. The financial losses of the Union during Bosh's administration were part of the evidence. According to Local 400, defendants failed to make or maintain adequate records of financial transactions in many instances. This evidence supported a jury's finding a loss of funds attributable to the mismanagement and breach of duty of the defendants. The evidence may have contained contradictions, but it was

12

substantial and therefore adequate to support the jury's verdict.

The jury verdict and judgment entered thereon are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Honorable Thomas A. Olson,
District Judge, sitting in
place of Mr. Justice John
C. Sheehy

13