No. 88-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

IN THE MATTER OF THE ESTATES OF:
ANNA MARGARET CLARK, and
WALLACE BRADLEY CLARK, SR.,

Protected Persons.

---

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Don A. Labar and Margaret M. Joyce Johnson, Church,
Harris, Johnson and Williams; Great Falls, Montana

For Respondent:

Allin H. Cheetham, Fort Benton, Montana
Gary W. Bjelland, Great Falls, Montana

---

Submitted on Briefs: December 16, 1988

Decided: April 26, 1989

Filed:

_____
Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellants, George Clark, Bertha Novelli and Marian Molnar, three of the five adult children of Anna Margaret and Wallace Bradley Clark, Sr. (Seniors), appeal from a decree of the District Court of the Twelfth Judicial District, Chouteau County, which, with exceptions, approved the accounting of the conservator of their parents' estates. We reverse and remand for further proceedings.

The issues raised are as follows:

1. Did the District Court err in substantially approving the conservator's first annual accounting?

2. Did the District Court properly scrutinize the conservator's transactions with the protected persons?

3. Did the District Court err in determining that the protected persons were mentally competent?

In the 1970's, Wallace Bradley Clark, Jr. (Brad), the youngest son of the Seniors, moved from Alaska to Montana to operate his parents' 1,760-acre farm located near Geraldine. In 1977, the Seniors entered into a contract for deed with Brad whereby Brad agreed to purchase 800 acres of the farm for $160,000 at 6 percent interest. The contract provided for annual payments to be made from the net proceeds of one-third of the grain grown on the land.

At about the same time, Brad and the Seniors entered into a ten-year lease for the remaining 960 acres of the farm. The contract provided for the annual payment of a one-fourth share of all crop produced on the acreage under lease.

None of the other Clark children resided near the Seniors. The oldest son, George, had farmed in the Geraldine

area until 1981, when he retired and moved to West Yellowstone. The remaining children, Bertha Novelli, Marian Molnar and Josephine Wilson, all resided in Alaska. Although the daughters and George did not live in the vicinity of the Seniors, the record indicates that they each visited their parents yearly.

During his visits, George became concerned that his parents were no longer capable of managing their financial affairs. In 1984, he discovered that his mother had overdrawn her checking account by writing checks to the grandchildren. In 1985, his father told him that he had signed some papers but didn't know what they were. Upon investigation, George found that the Seniors had deeded one-half of the 960 acres of farmland to the five children. Further investigation revealed that the Seniors had given Brad full power of attorney over their affairs.

On April 25, 1985, George petitioned the District Court for the appointment of a conservator for the Seniors, both in their early 90s at the time. Concerned that Brad might be exercising undue influence over his parents, George nominated one L.C. Siebenaler, a disinterested party, as conservator. A hearing was held on the matter, during which the District Court interviewed the elderly couple. The court found that due to their advanced age and occasional forgetfulness, both parties were unable to manage their property and affairs effectively without assistance. Over George's objection, the court appointed Brad as conservator, finding that it would be in the best interest of the Seniors if a family member held the position rather than someone they did not know. On June 11, 1985, Brad posted two bonds in the amount of $25,000 each. Letters of conservatorship issued.

On September 18, 1985, Brad filed an inventory and appraisement of the fair market value of the assets of the

Seniors as of July 8, 1985. He failed to file his first annual accounting, however, until January 8, 1987. Shortly after filing the accounting, Brad filed an amended inventory and appraisement of assets. The amended inventory reflected a decrease of approximately $30,600 of the balance receivable from the 1977 contract for deed between Brad and the Seniors. Brad later testified that the original inventory showed both the principal and interest due and owing on the contract for deed; the amended version reflected only the principal. No reference to the $30,600 in interest Brad admittedly owed on the contract as of July 8, 1985, can be found on the amended inventory.

A hearing on the accounting was held on January 19, 1987, during which George filed written objections. Shortly thereafter, George filed additional exceptions, seeking to void certain transactions made by Brad, as well as a more detailed accounting, an audit of the estates and the removal of Brad as conservator.

A hearing to consider the objections was held on March 2, 1987. The court took testimony at that time but also granted Brad's motion for a continuance to April 6, 1987, to allow Josephine Wilson, one of the Clark daughters, to appear and testify. After the hearing, the District Court issued an order that accepted and approved the first annual accounting.

George, Bertha and Marian moved the court to re-open the hearing on the accounting and to remove Brad as conservator. The District Court granted the motion and trial was held on August 17 and 19, 1987.

During the trial, Brad testified that in 1985 and 1986 he exchanged a series of checks with the Seniors, resulting in the forgiveness of approximately $70,566 in indebtedness Brad had accumulated under the contract for deed, including $30,600 in interest. In its order issued after the trial,

- 4 -

the District Court voided these transactions, finding that they were of such magnitude as to endanger the Seniors' welfare and that they violated § 72-20-203, MCA, the statute prohibiting a fiduciary from dealing with trust property for his own benefit. Appellants do not appeal from this part of the District Court order.

Brad also testified that his father had given him other gifts that were not reflected on the accounting, including $720 for grasshopper poison and the Seniors' share of the 1985 crop, which amounted to approximately 700 bushels of winter wheat and 375 bushels of barley. Brad stated that his father had given him the Seniors' share of the crop every year since 1981. According to Brad, his father intended to give him the farm. The contract for deed was executed only to avoid gift taxes. Therefore, Brad contended, when farming became less lucrative, his father no longer required him to pay under the contract. Brad also testified that he had taken out a $3,900 loan on the 1985 crop, putting all of the proceeds in his personal account and none in the Seniors, even though the Seniors owned a share of the crop under the contract and lease.

With the exception of the avoidance of the $70,566 in forgiven indebtedness mentioned above, the District Court once again approved the first annual accounting. The court found that the Seniors' promised to give Brad the farm and gave him their share of the crop and other gifts in honor of that promise. The court also found that the Seniors were mentally competent and capable of handling their own affairs, though they had difficulty remembering their actions afterward. The court refused to remove Brad as conservator, continuing the question to the hearing on the second annual accounting, which Brad had not yet filed.

On April 18, 1988, George, Bertha and Marian filed a motion asking the District Court to either withdraw or amend its findings and conclusions. The movants sought a new trial in the alternative. The District Court failed to rule on the motion within 45 days. Hence, under Rule 59(d), M.R.Civ.P, the motion was deemed denied.

On June 24, 1988, George, Bertha and Marian appealed to this Court, seeking, among other things, the removal of Brad as conservator. This question was rendered moot when, on October 17, 1988, Brad resigned his position. Gary W. Bjelland, the conservator appointed in Brad's stead, has joined as amicus curiae in the appeal of George, Bertha and Marian with respect to the remaining issues.

A conservatorship may be warranted when, due to advanced age, a person is unable to effectively manage his affairs and he owns property that is in danger of being wasted or dissipated unless proper management is provided. Section 72-5-409(2), MCA. The institution of a conservatorship grants the district court broad powers. The court may exercise all powers over the estate that a protected person could exercise if he were not under a disability, except the power to make a will. At all times, however, the court's handling of the property must be for the benefit of the protected person. Section 72-5-421(3), MCA. The court may exercise these powers directly or through a conservator. Section 72-5-421, MCA. If a conservator is appointed, he must administer the estate as would the court if administering it directly, that is, for the benefit of the protected person.

The conservator is required to account to the District Court on an annual basis. Section 72-5-438, MCA. The District Court must carefully scrutinize the accounting, keeping in mind that it is the conservator, as trustee of the

estate, who bears the burden of proving the proper disposition of the property under his control. Local Union No. 400 of the Internat'l Union of Operating Eng'rs v. Bosh (1986), 220 Mont. 304, 312, 715 P.2d 36, 41. The conservator must therefore keep meticulous accounts of his administration of the estate, accounting for "the source of every item of income and the purpose of every item of expense." In re Allard (1914), 49 Mont. 219, 229, 141 P. 661, 665.

The record demonstrates that the first annual accounting filed by Brad Clark, the conservator in this case, was less than adequate. Other than a ledger listing drafts written on his father's checking account, Brad failed to introduce any evidence to verify the accounting. He failed to submit bank statements reflecting opening and closing balances, deposits and withdrawals. He failed to produce receipts for purchases made on his personal credit card allegedly for the benefit of the Seniors. He failed to introduce gift and income tax returns filed by the Seniors.

Furthermore, Brad's accounting was inaccurate and incomplete. He failed to account for grain held in storage at the opening of the conservatorship but sold subsequently. He failed to account for his gift from the Seniors' of their share of the grain under the contract for deed and lease. He failed to account for interest due under the contract for deed. He failed to indicate either in the original inventory, the amended inventory or the accounting that the Seniors' interest in the land under the 1977 contract for deed had been subordinated in 1983 to a Federal Land Bank mortgage that secured a $230,000 loan.

The purpose of the statutorily required annual accounting is to inform the court of the financial condition of the estate and to ensure that the conservator is managing the property for the benefit of the protected persons. In

order to fulfill these purposes, the accounting must be accurate, complete and verifiable. The accounting filed by the conservator in this case is none of these. The District Court erred in accepting and approving it.

When the accounting proferred by the conservator is inadequate, the District Court may require the conservator to submit to a physical check of the estate. The physical check may be made in any manner specified by the court. Section 72-5-438(3), MCA. In this case, the appellants have requested an audit of the estate. Under the circumstances, an audit may be the best method by which to determine the estate's financial condition. We therefore remand this case for an audit and rehearing.

The conservator acts as a fiduciary. As such, he is required to observe the stringent standards applicable to trustees. Section 72-5-423, MCA. Appellants argue that the District Court failed to measure Brad's actions against these rigorous standards. Instead, the court excused Brad's actions because he "was told he should handle his folks' affairs just as he had prior to the institution of the conservatorship, and which he did without any advice to the contrary from his attorney."

The purpose of a conservatorship is to preserve the property of the protected person. A conservator who profits to the detriment of his wards cannot be excused because he acted out of ignorance or because he acted in the same self-serving manner as he had prior to the institution of the trust. On remand, the District Court must more carefully scrutinize Brad's administration of the estate. Any transactions in which Brad obtained an advantage must be presumed to be entered into by the Seniors without sufficient consideration and under undue influence. Section 72-20-208, MCA. Brad has the burden of proving that the any

- 8 -

transactions in which he obtained an advantage were for the benefit of the Seniors and that the Seniors freely entered into the transactions with full knowledge of the facts.

Appellants argue that the District Court improperly ruled that the Seniors were mentally competent from 1981 through the period of the first accounting. We agree. In order to prove that any transactions in which Brad obtained an advantage were entered into by the Seniors freely and with full knowledge of the facts, Brad must also prove that the Seniors were mentally competent. He failed to do so.

The institution of a conservatorship is not an adjudication of competency and has no effect on the protected person's capacity. Section 72-5-421(5), MCA. The protected person is therefore presumed to have the capacity to contract with third parties.

When the protected person transacts with the conservator, however, the presumption shifts. Because the conservator is held to the utmost standard of good faith and fair dealing, he bears the burden of proving that the protected persons were at all times capable of understanding the nature of any transaction in which the conservator obtained a benefit.

In the instant case, the only evidence in favor of a finding that the Seniors were mentally competent comes from the testimony of the conservator himself. This testimony is refuted by at least two of the other children. Under the circumstances, we cannot say that the conservator met his burden of proof.

We reverse and remand for further proceedings in accordance with this opinion.

_____
William E Hunt Sr
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 10 -

# CORRECTION

Date __7/10/89__

EDITORIAL DEPARTMENT
West Publishing Co., P.O. Box 3526, St. Paul, MN 55165

Please make the following correction in the opinion in the case of:

Title: _Estate of Clark_

_(88 - 380)_

Vol. _772_ ~~Rptr.~~ _P.2d at 302_ ~~Page~~

~~In~~ first ~~second~~ column, ~~line~~ _____ from ~~top~~ bottom.

_last paragraph_

should read _Brad has the burden of proving that the any transactions in which he obtained an . . ._

Signed _Ann Chapman Otto_

The expense of making changes is such that we cannot undertake it for items of merely typographical style.

West Publishing Co.

N182c