No. 99-511

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 185N

ANNA MAE STEIN and LEO ZIMMER,

as Co-personal Representatives of the

ESTATE OF JOHN ZIMMER, Deceased,

Plaintiffs and Respondents,

v.

TOM ZIMMER, personally and as

Guardian/Conservator of the

ESTATE OF JOHN ZIMMER,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Valley,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Torger Oaas, Attorney at Law, Lewistown, Montana

For Respondents:

Matthew W. Knierim, Christoffersen & Knierim, P.C.,

Glasgow, Montana

Submitted on Briefs: February 24, 2000

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Tom Zimmer (Tom) appeals from the Findings and separate Conclusions of Law and Judgment entered in favor of Anna Mae Stein and Leo Zimmer (Anna Mae and Leo) by the Seventeenth Judicial District Court, Valley County. We affirm in part, reverse in part, and remand.

¶3 Tom raises the following issues on appeal:

¶4 1. Whether the District Court erred when it determined that a conservator could not continue to maintain joint ownership interests in property with his ward?

¶5 2. Whether the District Court erred when it determined that John Zimmer did not gift property to Tom prior to his death?

¶6 3. Whether the District Court abused its discretion when it refused to allow Tom to amend his answer to include a counterclaim for conservator fees?

BACKGROUND

¶7 In approximately 1961 Tom and his brothers, John and Charles Zimmer, formed a partnership with respect to their farming and ranching operation. This partnership was dissolved in 1984 as a result of an action filed by Charles. Subsequently, Tom and John Zimmer sold their interests in the partnership land, retained their cattle, and bought out Charles' interest in the untitled farm equipment. Tom and John filed partnership tax returns through 1987 and continued to operate their cattle business together on a 50/50 basis.

¶8 John Zimmer (John) never married and did not have any children. In 1982, 1985, and 1986, John opened several joint tenancy bank accounts, designating Tom as his joint tenant with right of survivorship. In 1988 John changed the ownership on his 6-U livestock brand certificate to "John Zimmer Jr. or Thomas Zimmer." Prior to April 1989 John added Tom as a joint owner on the certificates of title for five of his titled motor vehicles, designating the owners as "Zimmer, Thomas and John Jr." The documents in the record indicate that this designation appeared on the certificates of title as early as 1985.

¶9 In April 1989 John suffered a stroke. In May 1989, while John was undergoing medical treatment in Yellowstone County, Tom was appointed as John's conservator. As part of the conservatorship, Tom filed an opening inventory of the assets of the ward in 1989 and filed annual accountings throughout the pendency of the conservatorship.

¶10 John Zimmer died intestate on July 7, 1996. Shortly thereafter, Tom filed a final accounting for the conservatorship, which revealed his joint ownership interests for the first time. Following the filing of the final accounting, Anna Mae and Leo, two of John and Tom's siblings, filed a petition for an order to show cause as co-personal representatives of John's estate regarding the adequacy of the conservatorship accountings filed by Tom. An order to show cause hearing was conducted on July 24, 1997, and the District Court concluded that additional information was needed before a determination could be made regarding approval of the accountings. As a result, the District Court continued the hearing without date until either party requested the matter to be reopened.

¶11 On October 22, 1997, Anna Mae and Leo filed a Complaint alleging that Tom had violated his fiduciary duty to John and that Tom had failed to account to the court in a proper manner. Tom responded by denying the allegations and asserting the affirmative defenses of estoppel and laches. After the parties conducted discovery, the District Court entered a Scheduling Order setting trial for April 26, 1999.

¶12 On April 8, 1999, Tom moved the court for permission to amend his answer to include a claim for payment of conservator fees. Anna Mae and Leo filed a response to Tom's motion, requesting that the District Court deny Tom permission to amend his answer on the grounds that trial was less than two weeks away and that Tom's claim was statutorily time-barred. On April 20, 1999, the District Court issued a Minute Entry Order denying Tom's motion to amend on the basis that it was not timely made in relation to the trial date.

¶13 The District Court conducted a one-day bench trial regarding the matter on April 26, 1999. Following the trial, the District Court gave the parties the opportunity to submit proposed findings of fact and conclusions of law. The District Court issued its Findings on June 3, 1999, and issued separate Conclusions of Law and Judgment on August 9, 1999. The District Court determined that Tom failed to properly segregate and account for the joint tenancy interests and that the cattle were not jointly owned and are part of the estate of John Zimmer. As a result, the court refused all of Tom's joint ownership or survivorship claims, with the exception of the vehicles. Tom appeals from the District Court's Findings and separate Conclusions of Law and Judgment.

## STANDARD OF REVIEW

¶14 The standard of review of a district court's findings of fact is whether they are clearly erroneous. *See Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## ISSUE 1

¶15 Whether the District Court erred when it determined that a conservator could not continue to maintain joint ownership interests in property with his ward?

¶16 Tom asserts that § 72-5-427(3)(d), MCA, allows a conservator to continue to hold joint ownership interests in property with his ward that were created prior to the conservatorship. In addition, Tom argues that Anna Mae and Leo have not produced any evidence that Tom caused any loss to John's estate during the conservatorship.

¶17 In response, Anna Mae and Leo assert that a conservator may not enter into or maintain joint tenancy with right of survivorship ownership in the ward's assets without

disclosure and/or approval from the court. Anna Mae and Leo argue that such ownership creates a conflict of interest between the conservator and his ward.

¶18 The District Court concluded that Tom had failed to properly segregate and account for the joint tenancy interests and ordered that the assets Tom claimed to have a joint tenancy interest in with right of survivorship, with the exception of the five motor vehicles, belong to John's estate. In addition, the District Court ordered Tom to immediately turn over all such property to the personal representatives of the estate of John Zimmer.

¶19 Section 72-5-427(3)(a), MCA, provides that a conservator, acting reasonably in efforts to accomplish the purpose for which he was appointed, may act without court authorization or confirmation to:

> [C]ollect, hold, and retain assets of the estate, including land in another state, until in his judgment disposition of the assets should be made, and the assets may be retained even though they include an asset in which he is personally interested . . . .

In the exercise of his powers as conservator, the conservator is to act as a fiduciary and is required to observe the standards of care applicable to trustees. *See* § 72-5-423, MCA; *see also Matter of Estate of Clark* (1989), 237 Mont. 179, 184, 772 P.2d 299, 302. A conservator owes a duty of loyalty to his ward and must not place himself in a position where his individual interests conflict with the interests of the ward. *See* § 72-34-103, MCA; *see also Moore v. Self* (Ga. Ct. App. 1996), 473 S.E.2d 507, 509. Any transaction which is affected by a substantial conflict of interest is voidable unless the transaction is approved by the court after notice to interested persons. *See* § 72-5-434, MCA.

¶20 Ownership of a joint tenancy is not necessarily inconsistent with trusteeship. *See Estate of Bodman v. Bodman* (Miss. 1996), 674 So. 2d 1245, 1250. The Court of Appeals of Kansas has adopted a case-by-case approach for deciding whether a conflict of interest exists between a conservator's fiduciary duty and his personal interest as a joint tenant. *See Fielder v. Howell* (Kan. Ct. App. 1981), 631 P.2d 249, 251. The rationale for the Kansas court's adoption of this rule is based on the following premise:

> [W]hen the estate of the ward is in no way diminished and the apparent conflict of interest does not manifest itself by controlling the guardian's [conservator's] actions, it would seem unduly harsh to make an example of a loyal fiduciary because of a

potential, yet unrealized, conflict. . . . [A] case-by-case approach must be taken in alleged conflict of interest circumstances to determine whether the beneficiary of the trust is actually harmed or the trustee is rewarded by the dual interests.

*Fielder*, 631 P.2d at 251. We agree.

¶21 It should be noted that in this case, there has been no allegation and no evidence that Tom, as conservator, misused any jointly held property for his individual purposes or that he took any other action calculated to preserve the value of the jointly held accounts and property to benefit his individual survivorship rights. Accordingly, we will examine each joint tenancy interest claimed by Tom to determine whether the beneficiaries were actually harmed or Tom was rewarded by any alleged dual interest.

<u>Bank Accounts</u>

¶22 In 1982, 1985, and 1986, John opened a number of bank accounts, designating Tom as the joint tenant with right of survivorship. Tom was not appointed as John's conservator until May 1989. Following his appointment as conservator, Tom continued to deposit funds received by John in the accounts he shared with John as joint tenant.

¶23 There can be no doubt that Tom occupied a conflict of interest position with John as to these accounts, as Tom stood to gain by preserving and adding to these accounts during the conservatorship and taking the balance as the survivor. Upon appointment as conservator, Tom had a duty to remove this conflict of interest by establishing a separate conservatorship account in which to place funds received by John during the conservatorship. *See Jackson v. Jackson* (Miss. 1999), 732 So. 2d 916, 921. Accordingly, we conclude that Tom, as the joint tenant, is entitled to the funds contained in the joint tenancy accounts at the time the conservatorship was created. However, any funds deposited in these accounts during the conservatorship belong to John's estate. This does not preclude Tom from claiming an interest in these funds from John's estate as an heir at law.

¶24 Accordingly, we affirm the District Court's conclusion that the funds placed in the joint accounts after the date of the conservatorship belong to John's estate. We reverse the District Court's order regarding the funds contained in the joint tenancy accounts prior to the establishment of the conservatorship. On remand, the District Court should conduct a hearing to determine the amount of funds contained in the accounts prior to the

conservatorship and the amount of funds deposited in the accounts during the conservatorship and enter an appropriate order consistent with this opinion.

## Cattle

¶25 In 1988 John changed the ownership on his 6-U livestock brand certificate to "John Zimmer Jr. or Thomas Zimmer." As a result, Tom claims to be 100 percent owner of the 6-U cattle and cattle sale proceeds at the time of John's death or, in the alternative, he is a tenant in common in the cattle and sale proceeds along with John's estate. Anna Mae and Leo assert that Tom, as John's conservator, should not be permitted to engage in joint ownership with the right of survivorship or tenancy in common with John as such relationships violate Tom's fiduciary duties. The District Court concluded that the cattle were not jointly owned and are property of John's estate.

¶26 We have previously ruled that in the absence of more specific statutes, the creation of joint tenancies is controlled by §§ 70-1-306, -307, and -314, MCA. *See Matter of Estate of Shaw* (1993), 259 Mont. 117, 124, 855 P.2d 105, 109. Section 70-1-307, MCA, provides:

> A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, *when expressly declared* in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants.

(Emphasis added.) Section 70-1-314, MCA, provides:

> Every interest created in favor of several persons in their own right, including husband and wife, is an interest in common unless acquired by them in partnership for partnership purposes or *unless declared in its creation to be a joint interest*, as provided in 70-1-307.

(Emphasis added.)

¶27 Tom argues that our decision in *Shaw* cannot change an existing joint tenancy interest. However, in *Shaw* we were merely interpreting the joint tenancy statutes that have been in existence since 1895. These statutes clearly provide that in order to create a joint tenancy, an interest must be expressly declared a joint interest. As we noted in *Shaw*, these statutes support the rule that simply using the word "or" or the words "and/or" in a document of title, conveyance or ownership, without more, does not create a joint tenancy. 259 Mont.

at 124, 855 P.2d at 110. Thus, our decision in *Shaw* did not change an existing joint tenancy interest as one was never created according to the statutes governing the creation of joint tenancy interests in Montana.

¶28 Accordingly, we conclude that Tom was a tenant in common with John in the cattle. Therefore, we affirm the District Court's conclusion that the cattle were not jointly owned. However, as a tenant in common, Tom is entitled to one-half of the 6-U cattle and John's estate is entitled to the other half. Again, this does not preclude Tom from claiming an interest in the cattle or cattle sale proceeds from John's estate as an heir at law.

ISSUE 2

¶29 Whether the District Court erred when it determined that John Zimmer did not gift property to Tom prior to his death?

¶30 Tom alleges that the District Court ignored testimony that established John had gifted his share of the partnership land payments and the proceeds from the sale of untitled personal property to Tom prior to his death. Tom argues that the law on gifts from a ward to his conservator is that such gifts are valid, but there is a strong prescription against their validity. Anna Mae and Leo assert that a conservator may not make gifts of the ward's assets to himself without judicial authorization and approval.

¶31 The District Court concluded that there was no credible evidence to support Tom's claim that John intended to gift any property to Tom. In addition, the District Court pointed out that Tom did not disclose any gifting by John in the annual conservatorship accountings filed with the court.

¶32 The distributive powers and duties of a conservator include:

> (1) A conservator may expend or distribute income or principal of the estate without court authorization or confirmation for the support, education, care, or benefit of the protected person and his dependents . . . .

> (2) If the estate is ample to provide for the purposes implicit in the distributions authorized by the preceding subsections, a conservator for a protected person other than a minor *has power to make gifts to charity and other objects as the protected person might have been expected to make in amounts which do not exceed in total*

*for any year 20% of the income from the estate*.

Section 72-5-428, MCA (emphasis added). The general rule is that a gift by a ward to his conservator is presumed to be invalid, although the presumption may be overcome by evidence establishing that the ward acted voluntarily, with full knowledge, free from undue influence on the part of the conservator, and that the conservator acted in good faith. *See* James T. Watson, Annotation, *Validity of Inter Vivos Gift by Ward to Guardian or Conservator*, 70 A.L.R.4th 499, 514 (1989).

¶33 Under § 72-5-428, MCA, a conservator has the power to make gifts from the ward's estate as the ward might have been expected to make in amounts which do not exceed in total for any year 20 percent of the income from the estate. However, gifts from a ward to his conservator are presumed to be invalid. While Tom presented witness testimony regarding John's competency to make such a gift, Tom did not present any evidence that John might have been expected to make such gifts to Tom, nor did Tom present any evidence that John acted voluntarily, with full knowledge, and free from Tom's undue influence in making such gifts. Thus, we conclude that Tom has failed to overcome the presumption of invalidity with regard to John's alleged gifts of his share of the partnership land payments and the proceeds from the sale of untitled personal property. Accordingly, we affirm the District Court's conclusion that there was no factual basis to support the validity of such gifts from John to Tom during the conservatorship.

¶34 However, we note that John and Tom purchased the untitled personal property as tenants in common from their brother Charles in 1984. Consequently, Tom is entitled to one-half of the property and proceeds from the sale of the property and John's estate is entitled to the other half. This also does not preclude Tom from claiming an interest in the partnership land payments and the personal property and any sale proceeds from John's estate as an heir at law.

ISSUE 3

¶35 Whether the District Court abused its discretion when it refused to allow Tom to amend his answer to include a counterclaim for conservator fees?

¶36 The standard of review employed by this Court when reviewing a district court's denial of a motion to amend the pleadings is whether the district court abused its discretion. *See Porter v. Galarneau* (1996), 275 Mont. 174, 188, 911 P.2d 1143, 1151-52.

Rule 15(a), M.R.Civ.P., provides that leave to amend shall be freely given when justice so requires. "Refusal to permit an amendment offered at an opportune time and which should be made in the furtherance of justice is an abuse of discretion." *Village Bank v. Cloutier* (1991), 249 Mont. 25, 28, 813 P.2d 971, 973.

¶37 Tom contends that the District Court abused its discretion under Rule 15, M.R.Civ.P., by refusing to allow him to amend his answer to include a counterclaim for fees associated with the work he performed as John's conservator. In response, Anna Mae and Leo assert that the District Court acted within its discretion when it refused to allow Tom to amend his answer to include such a claim.

¶38 The District Court denied Tom's motion to amend his answer to assert a counterclaim on the basis that it was not timely made in relation to the trial date. Tom filed his motion to amend on April 8, 1999, and the trial was scheduled for April 26, 1999.

¶39 Creditors of an estate are required to submit their claims within four months after the date of the first publication of the notice or be forever barred. *See* § 72-3-801(1), MCA. A personal representative may give written notice by mail notifying the creditor to present his claim within 4 months from the published notice or 30 days from the mailing, whichever is later, or be forever barred. *See* § 72-3-801(2), MCA.

¶40 All claims against a decedent's estate arising prior to the decedent's death are barred against the estate unless presented within the earlier of one year after the decedent's death or the time provided by § 72-3-801, MCA. *See* § 72-3-803(1), MCA. All claims against a decedent's estate arising at or after the death of the decedent, except claims based on contract with the personal representative, are barred against the estate unless presented within the later of four months after the claim arises or one year after the decedent's death. *See* § 72-3-803(2), MCA.

¶41 In this case, Tom first asserted a claim for conservator fees pursuant to § 72-5-432, MCA, against John's estate in his Motion to Amend Answer to Assert Counterclaim for Payment of Fees to Conservator filed on April 8, 1999, approximately two weeks prior to the scheduled trial. Anna Mae and Leo first published notice to the creditors of John's estate on October 31, 1996. Regardless of whether Tom's claim against John's estate for conservator fees is deemed to have arisen prior to or after John's death, Tom's claim is barred pursuant to § 72-3-803, MCA. Accordingly, we conclude that the District Court did not abuse its discretion when it denied Tom's motion to amend his answer to assert a claim

for conservator fees on the basis that it was untimely.

¶42 Affirmed in part, reversed in part, and remanded.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER