No. 05-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 106N

IN THE MATTER OF HAZEL E. BRANNING,
an Incapacitated Person.

APPEAL FROM:     The District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. DG 2001-37,
                 Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Steven J. Shapiro, Attorney at Law, Montana City, Montana
            (Attorney for Nancy Marshall)

        For Respondent and Cross-Appellant:

            Karen M. Branning, *pro se*, Ben Lomand, California

                                        Submitted on Briefs:  October, 26, 2005

                                               Decided:  May 9, 2006

Filed:

        _____
                          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of nonciteable cases published in the Pacific Reporter and Montana Reports.

¶2 Hazel and Morland Branning raised five children and had been married approximately 58 years at the time Morland died in March 2005. As Hazel and Morland aged and experienced physical and mental infirmities, their youngest daughter, Nancy, petitioned the District Court and was appointed guardian for each of them. Nancy was guardian and conservator for her father from July to October 31, 2002, at which time Capital City Case Management was appointed guardian and conservator for Morland. Nancy served as guardian and conservator for her mother Hazel from July 2001 until March 2003.

¶3 Nancy's sister, Karen, and their brother, Jim, disagreed with the decisions Nancy was making on behalf of their mother, and legally sought to have Nancy removed as guardian and conservator. Hazel also sent a letter to the District Court requesting that Nancy be removed. In March 2003, the District Court determined that Hazel did not need a guardian or a conservator; therefore, it dissolved Nancy's guardianship and conservatorship and named Karen as Hazel's medical guardian.

¶4 During and following Nancy's guardianship and conservatorship, she filed two accountings with respect to Hazel's Estate with the District Court. In the post-termination

2

final accounting, she sought reimbursement for expenses and payment for services rendered. The District Court approved some expenses and granted payment for some services, and rejected other requests. Nancy appeals from the court's refusal to pay all costs and expenses presented in the final accounting. Karen and Jim cross-appeal, claiming the court erred in not rejecting both accountings and requests for expenses and fees in their entirety. We affirm in part and reverse and remand in part.

## ISSUE

¶5 A restatement of the dispositive issue on appeal is whether the District Court properly accounted for all of Hazel's assets and whether it correctly determined that, based upon Nancy's accountings, she was entitled to certain out-of-pocket expenses and fees for service, and not to others.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Hazel was 73 years old in July 2001 when her youngest daughter, Nancy, was appointed as Hazel's guardian and conservator over the objections of Hazel's son, Jim. Shortly thereafter, Nancy had Hazel involuntarily committed to the Golden Triangle Community Mental Health Center. In October 2002, Hazel wrote a letter to the District Court requesting that Nancy be removed as guardian and conservator and replaced by Jim and another of Hazel's daughters, Karen.

¶7 In November 2002, Nancy filed her first accounting, followed, in December, by her objection to Hazel's personal entreaty to have her removed as guardian and conservator. A few days later, Karen and Jim filed a joint petition seeking to vacate their mother's

3

involuntary commitment and the order requiring Hazel to have a guardian and conservator. In the alternative, they sought to remove Nancy as the guardian and conservator and be appointed as successor guardians. Hazel filed a lengthy affidavit describing the hardships she had endured since Nancy became her guardian and conservator. Hazel alleged that Nancy was disposing of and inappropriately distributing her possessions, and requested an accounting of her possessions and her estate. Jim and Karen also filed lengthy affidavits in support of their petition alleging similar misconduct by Nancy.

¶8 The court held a hearing on the first accounting and on the petition to terminate guardianship on February 19, 2003. After hearing testimony from Hazel, Nancy, Karen, Hazel's son Dale, and some of Hazel's caregivers, the District Court ordered the parties to submit proposed findings of fact. The court also directed that the estate's finances be examined by a mutually agreed-upon independent party. Van Barron was appointed to serve in this capacity.

¶9 On March 27, 2003, the District Court concluded that Hazel did not need a general guardian or a conservator. The court appointed Karen as Hazel's medical guardian and removed Nancy as Hazel's general guardian/conservator.

¶10 On November 25, 2003, the court held another hearing on the first accounting. At this hearing, Nancy, as outgoing conservator/guardian, presented a final "Report and Summary of Account" prepared by Scheffel and Company (Scheffel) at Nancy's behest. Scheffel noted that the report was merely a compilation presented in the form of "financial statements information that is the representation" of Nancy. Scheffel advised in its Report that the

4

company had not "audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them. The Conservator has elected to omit substantially all of the disclosures required by generally accepted accounting principles."

¶11 As stated in the Scheffel Report, Hazel and Morland's joint estates were valued at approximately $92,500.00, $61,000.00 of which was comprised of a debt purportedly owed to them by their son, Jim. Scheffel determined that the value of Hazel's estate was one-half this amount, or approximately $46,250.00. The Scheffel Report also set forth Nancy's claim against Morland's Estate for costs and fees associated with her guardianship/conservatorship of both Morland and Hazel, totaling $37,519.15.

¶12 The court instructed the parties to review the Scheffel Report, compare it to the previously-submitted accounting by independent auditor Van Barron, attempt to resolve any inconsistencies between the two reports, and present to the court at a hearing "only the contested portions of the accountings." At the hearing held on April 15, 2004, Hazel argued through counsel that she was entitled to have returned to her certain items of personal property as well as funds that had been divested allegedly for the purpose of qualifying her for Supplemental Security Income (SSI) and Medicaid. The court then directed counsel for the parties to research and report back on Medicaid rules with respect to Social Security and SSI, and to estimate the remaining value of Hazel's estate, including Hazel's right to inherit from Morland and to be a beneficiary on his life insurance. The court imposed a deadline of June 15, 2004, for counsel to provide the requested information. On June 15, Nancy, through

her attorney, submitted her brief on the accounting issues identified by the court. Hazel's counsel submitted no brief at any time responding to the court's request.

¶13 Subsequent to the April hearing, Karen and Jim filed objections to Nancy's accounting. Hazel demanded, among other things, the return of certain property and the restoration of her name as beneficiary to certain insurance policies. Karen's brief, in which Jim joined, primarily complained that the Van Barron accounting was incomplete and the Scheffel accounting, prepared at Nancy's behest, was unverifiable and lacked necessary supporting documentation. Nancy responded that Karen's and Jim's objections were belated, untimely and should have been presented at the April 15 hearing when the court requested arguments pertaining to contested portions of the accountings. Nancy also claimed that Karen and Jim had no standing to object to the accountings and that their arguments were without a factual basis.

¶14 The District Court issued its Decision and Order on December 16, 2004. Over the course of the proceeding, the court had heard testimony from Hazel, Nancy, Karen, Jim, Dale, Van Barron, and a fellow accountant, some of Hazel's caregivers and doctors. The court accepted the Scheffel report but noted that it was incomplete. It also accepted the Van Barron report. The court then reviewed the approximately $7,440.00 in expenses claimed by Nancy, determined which expenses related to Hazel rather than Morland, and awarded Nancy a total of $4,896.40 in expenses. The District Court also awarded Nancy conservator fees in the amount of $2,670.00, as opposed to the $30,080.00 requested by Nancy. The court explained that it was "incredible" that on the days Nancy spent with her parents, she devoted

6

a full eight hours per day to conservator/guardian activities as opposed to family visits, performing tasks that a daughter would normally perform for her parents, and attending to her own personal needs. The court therefore determined that Nancy was entitled to fees from her parents' estates for three hours per day that she spent with her parents. The Court granted her one-half of these fees from Hazel's Estate. The court also held that Nancy was entitled to attorney fees totaling $6,155.71.

¶15 The District Court also ordered that Nancy restore Hazel's name as beneficiary on Morland's insurance policies. In the event that any of these policies had been cashed out, Nancy was directed to repay her mother one-half of the proceeds because there was no evidence that Nancy had spent any of the proceeds on Hazel. Nancy was ordered to restore her mother's name on the title to a truck owned by Morland and Hazel, and to rescind a pre-paid burial contract she had purchased for Hazel with $6,000.00 of Hazel's money because Hazel had made it known that she intended to be cremated. In the event Nancy was unable to rescind the contract, she was ordered to repay Hazel $6,000.00. The court further found that Nancy had transferred two Certificates of Deposit, each valued at $18,000.00, originally jointly held by Morland and Hazel into an account in Nancy's name only. As there was no evidence that Nancy had spent any of the $36,000.00 on Hazel, the court ordered her to repay Hazel $18,000.00. Lastly, Nancy had sold a car that Hazel and Morland had owned for $2,500.00. She was instructed to repay Hazel $1,250.00.

¶16 Nancy filed a timely appeal from the District Court's Decision and Order. Karen filed a timely cross-appeal.

**STANDARD OF REVIEW**

¶17 We review a trial court's determinations of law *de novo*. We typically review a trial court's findings of fact to determine whether those findings are clearly erroneous. A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a firm conviction that a mistake has been made. We refined the clearly erroneous test when considering accountings submitted for conservatorships by holding that an accounting must be accurate, complete, and verifiable. *In re Guardianship of Saylor*, 2005 MT 236, ¶ 10, 328 Mont. 415, ¶ 10, 121 P.3d 532, ¶ 10 (internal citations omitted).

**DISCUSSION**

¶18 Nancy notes that on November 25, 2003, the date on which she filed her final accounting, the District Court ordered the parties to resolve any issues relative to the accountings and to bring "only the contested portions of the accountings" to an upcoming hearing. Nancy argues that at the April hearing, neither her siblings nor her mother challenged her accountings, questioned her regarding the reasonableness of her costs and expenses, or asked for documentation verifying her expenses. She further asserts that the District Court asked the parties to brief whether the transfer of assets to Nancy was appropriate, or reasonably believed to be appropriate, considering SSI and Medicaid requirements. She states that she submitted a timely brief but the other parties did not submit briefs. Nancy, therefore, contends that because there was no evidence presented at the hearing contradicting her accountings, there was no substantial credible evidence to support

8

the District Court's findings that she was entitled to only a portion of the expenses and costs sought.

¶19     Karen argues on cross-appeal that the District Court erroneously allowed Nancy any costs or expenses because Nancy: 1) failed to comply with § 72-5-424(1), MCA, requiring a conservator to file with the appointing court, within 90 days after his or her appointment, a complete and accurate inventory of the estate of the protected person; 2) failed to provide documentation verifying the accuracy and completeness of the costs, attorney fees, and expenses presented in her accountings; 3) failed to obtain approval from the District Court to charge hourly fees for time spent as her mother's conservator; 4) failed to include in her accountings all of the assets belonging to the estate; and 5) violated §§ 72-5-423 and 72-34-110, MCA, by co-mingling her mother's funds with her personal funds.  Karen also argues that the District Court's Order failed to address some significant items belonging in Hazel's Estate, specifically $20,000.00 (plus interest) that was undisputedly entrusted to Nancy in 1998 by Morland to be invested on Morland and Hazel's behalf; a coin collection valued at approximately $2,000.00, and many of Hazel's personal possessions that Hazel listed for the court.

¶20     Karen relies on *Redies v. Cosner*, 2002 MT 86, 309 Mont. 315, 48 P.3d 697, wherein we held that the inventory requirements contained in § 72-5-424(1), MCA, were not discretionary for Montana's trial courts or for conservators.  In *Redies*, we reversed the district court for waiving the statutory 90-day inventory requirement on the ground that the liabilities of the estate in the *Redies*' case exceeded the assets.  We first explained that the

9

plain language of the statute required that the conservator "shall" file such an inventory. We elaborated that "shall" indicates a mandatory, non-discretionary requirement. *Redies*, ¶ 19. We further explained that "the purpose of the statutory inventory requirements . . . is to furnish a means by which the conservator's management may be checked and the accounts verified." *Redies*, ¶ 20, (citing *In Re Allard* (1914), 49 Mont. 219, 141 P. 661). Without such an initial inventory, subsequent annual accountings have no baseline against which to compare the assets and liabilities claimed in the annual accountings.

¶21 Karen also argues that the District Court should not have approved any costs or expenses in Nancy's accountings because she failed to submit documentation or verification of the costs and expenses claimed. Again, Karen relies on *Redies* in which we, in turn, relied on *Matter of Estate of Clark* (1989), 237 Mont. 179, 772 P.2d 299. In *Clark*, we held that a conservator bears the initial burden of proving that his or her fiduciary duties are met. *Clark*, 237 Mont. at 183, 772 P.2d at 302. Additionally, the conservator, to meet that burden, must present an accounting that is "accurate, complete, and verifiable." *Clark*, 237 Mont. at 184, 772 P.2d at 302. Moreover, "the conservator must . . . keep meticulous accounts of his administration of the estate, accounting for 'the source of every item of income and the purpose of every item of expense.'" *Clark*, 237 Mont. at 183, 772 P.2d at 302 (citing *Allard*, 49 Mont. at 229, 141 P. at 665). Karen argues that without such documentation, there was no way for the District Court to verify the accuracy of Nancy's accountings.

¶22 It is apparent from the specificity of the court's Decision and Order that the court believed it had sufficient evidence before it to determine the extent of the Estate property

10

before Nancy became involved in Hazel and Moreland's affairs, and after, as well as the amounts of fees and costs that were appropriate. Such evidence came from the testimony of the witnesses, as well as from the Scheffel and Van Barron reports. However, as noted by Karen, the Scheffel and Van Barron reports were incomplete in that they failed to include as Estate assets the $20,000.00 that Nancy testified she held in an account in her name for her parents, the coin collection and many personal items belonging to Hazel. As the existence and value of these items is undisputed, it was error for the District Court to fail to address them. Therefore, we remand to the District Court for an appropriate resolution of the return or distribution of these items.

¶23     Additionally, we conclude that it was error for the court to grant Nancy's request for legal fees without the benefit of documentation establishing that these fees were incurred as a result of Nancy performing her guardian/conservator duties. We note, for example, that of the $6,155.71 in legal fees claimed by and awarded to Nancy, $2,774.49 represented fees incurred before Nancy became guardian and conservator or after she had been removed as such. Therefore, we reverse the District Court's award of attorney's fees to Nancy and instruct, upon remand, that the District Court determine which legal fees appropriately reflect fees incurred by Nancy while she was acting as guardian/conservator for Hazel.

¶24     Lastly, we affirm the remainder of the District Court's Decision and Order. While no Inventory *per se* was filed, we note that the court's Order contains considerable specificity as to the assets, fees and expenses it addresses—specificity derived from considerable evidence pertaining to these assets, fees and expenses. While the accounting formalities required

11

under our case law and statutes were not met here, the District Court nonetheless entered a well-considered decision and imposed an equitable resolution under extremely difficult circumstances. See *Guardianship of Saylor*, ¶¶ 33 and 34 (As courts of equity, the district court and this Court have the power to grant complete relief and must fashion an equitable remedy.). To require that the parties and the District Court begin anew and reconsider all the issues resolved in the Decision and Order would result in a longer, more protracted proceeding which may actually further deplete Hazel's estate, which is generously valued now at little more than $45,000.00. We conclude that the proceedings on remand directed herein will be of such a limited nature, that the adverse impact, if any, on Hazel's Estate will be minimal.

¶25 For the foregoing reasons, we affirm in part and reverse and remand in part.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER

Justice Jim Rice concurring.

¶26 I concur with the Court's opinion. I am concerned, however, about the implication of the District Court's order with regard to Nancy's decision to divest Hazel of her assets in order to qualify for Medicaid assistance. The District Court concluded that:

Nancy testified that she had Hazel's name removed from the above-described assets, including Morland's will, because she believed it was necessary for Hazel's Medicaid and SSI eligibility. Notwithstanding Nancy's intentions, the Court finds that she violated her fiduciary duty to Hazel and failed to act in Hazel's best interest.

¶27 From this language, and from a reading of the entire order, it remains unclear to me whether the District Court concluded that Nancy had breached her fiduciary duty because of her decision to divest Hazel of her assets to establish Medicaid and SSI eligibility, or because of imprudent disposition of Hazel's assets while implementing that decision. From what I can glean from the limited record, Nancy's decision to divest Hazel's assets was economically beneficial, with Hazel receiving some $90,000 of medical care and monthly SSI benefits pursuant thereto, while making Hazel's divested assets available to Morland. This can be a legal and beneficial planning device when both spouses are living. Without more, I could not agree with a conclusion that Nancy had breached her fiduciary duty simply based on this decision. We are to review financial decisions "in light of the facts and circumstances existing at the time" they were made. Section 72-34-114(3), MCA.

¶28 However, there were serious questions about Nancy's disposition of Hazel's assets after she implemented this decision, particularly, the two certificates of deposit valued together at over $36,000. Despite the significance of this amount, which was expended during Nancy's administration, the evidence regarding the nature of these expenditures is very brief and vague. Nancy argues in her briefing that these funds were expended for Hazel and Morland's expenses. In her testimony, she stated that the funds were expended on "issues related to Dad" and for personal expenses she incurred in the management of Hazel's

13

estate, adding that this was all "in the accounting." The accounting provides little assistance. Nancy did not offer the District Court a clear explanation of the purpose of these substantial expenditures, and the court was entitled to conclude from the evidence that the assets were improperly dissipated and needed to be repaid, at least partially. Nancy simply failed to meet her burden to demonstrate otherwise.

/S/ JIM RICE

14